MRS. MORENE BROWN, Plaintiff-Plaintiff-in-Error, v. HERMAN HUDSON and JAMES C. HOWS, JR., Partners, doing business as TOM HUDSON COMPANY, Defendants-Defendants-in-Error.—363 S. W. (2) 505.

Middle Section. May 25, 1962.

Certiorari Denied by Supreme Court October 4, 1962.

Hugh C. Howser, Thomas C. Binkley, Nashville, for plaintiff in error.

Hugh C. Gracey and Richard D. Bird, Nashville, of counsel, Gracey, Buck, Maddin & Cowan, Nashville, for defendants in error.

CHATTIN, J. This suit was instituted by Mrs. Morene Brown, the widow of Jesse Martin Brown, Deceased, against Herman Hudson and James C. Hows, Jr., partners, doing business as Tom Hudson Company.

The plaintiff's husband was employed by Commerce Construction Company in constructing the Meigs School in Nashville, Tennessee. The defendants were subcontractors of the Commerce Construction Company. The defendants furnished Commerce Construction Company a dump truck to be used to remove debris and trash from the project. It was alleged in the declaration the dump truck was in a defective and dangerous condition. Due to the defect, during the course of the work, the bed of the truck was raised and the bed could not be lowered. After taking precautions, an attempt was made to make the hoist work, and while plaintiff's husband was underneath the bed it fell killing him. The declaration alleged that the defendants knew, or should have known, of the defective condition of the truck, and the negligence of defendants was a direct and proximate cause of the death of plaintiff's husband.

To the declaration, defendants pleaded the general issue of not guilty.

At the conclusion of the trial, the trial judge directed a verdict for and on behalf of the defendants and dismissed plaintiff's suit.

Plaintiff excepted to the court's action in directing a verdict for defendants and dismissing her suit and prayed an appeal in the nature of a writ of error to this Court.

There are four assignments of error, as follows:

1. "The trial court erred in directing the jury at the conclusion of all the proof to return a verdict in favor of the defendants, and against the plaintiff."

2. "The trial court erred in granting the motion for a directed verdict in that it applied law which is

inapplicable to facts before the Court, namely in its reliance on Louisville and Nashville Railroad Company vs. Head, 46 Tenn. App. 612, 332 S. W. (2d) 682.''

3. ''The trial court erred in holding that the death of plaintiff's husband was caused by an independent intervening cause.''

4. ''The Court erred in directing a verdict for the defendants because 'the employees of Commerce Construction Company saw need to raise the bed of the truck and while the bed was in a raised position they sought to make certain adjustments,' when in fact the uncontradicted evidence was that the truck bed was raised in its ordinary use and while so raised became stuck and then and only then were efforts made to correct the malfunction.''

The rules which govern this Court in the consideration of this question are stated in Lackey v. Metropolitan Life Insurance Company, 30 Tenn. App. 390, 206 S. W. (2d) 806, as follows:

''As said so often, this rule requires trial judges and appellate judges, in considering a motion by defendant for a directed verdict, to look to all the evidence, to take as true the evidence for plaintiff, to discard all countervailing evidence, to take the strongest legitimate view of the evidence for plaintiff, to allow all reasonable inferences from it in his favor; and if then there is any dispute as to any material determinative evidence, or any doubt as to the conclusion to be drawn from the whole evidence, the motion must be denied.''

Jesse Martin Brown, at the time of his death, was working for Commerce Construction Company on a

construction job at Meigs School in Nashville, Tennessee. He left surviving his wife, a son, and a daughter.

The defendants were sub-contractors of Commerce Construction Company. They had completed the masonry work on the Meigs School project. Commerce Construction Company was in the process of tearing a roof from the second floor of the building and it was necessary that this debris be removed from the premises. A chute had been constructed to slide the debris from the second floor to the ground below.

Defendants loaned Commerce Construction Company a dump truck to remove the debris and trash from the premises. Commerce Construction Company furnished the driver of the truck and the fuel. Commerce Construction Company also furnished the laborers to load the truck.

Two days before this fatal accident, Wallace Webb, an employee of defendants, delivered the dump truck to Warren Patterson, an employee of Commerce Construction Company. Webb instructed Patterson on how to operate the bed of the truck; that is, how to raise and lower the bed. There were two knobs on the dashboard in the cab of the truck which controlled the raising or lowering of the bed.

These knobs were connected to wires that led to a hydraulic hoist under the bed. To raise the bed it was necessary to pull one of the knobs. To lower the bed it was necessary to push that knob in and pull the other one out.

Patterson testified the first morning he drove the truck he asked Webb how to get the bed to come down. Webb told him to keep pushing the knob and it would

come down. He testified the knob that let the bed come down was pulled out to the extent the wire which went under the bed to the hoist was exposed. Patterson drove the truck for two days prior to the fatal accident on July 29, 1959.

He testified he had hauled six, eight, or ten loads of the debris during the two days he operated the truck. He noticed the bed of the truck did not come down as fast as a truck bed did that was completely released. The wire was too long to release the bed. He further testified the bed had always come down until the accident happened. He testified the hoist worked during the two days he drove it, but not, "like it would have if it had been in top shape." He did not notify anyone that the truck was not operating perfectly.

On the morning of the accident, Patterson was ordered by his employer to make a trip to Murfreesboro in another vehicle. He was also directed to show Mr. Brown, before he left for Murfreesboro, how the dump truck operated. Patterson and Brown got the truck and Patterson backed it up to the chute. He showed Mr. Brown how to raise the bed. After the bed was raised it stuck and would not come down.

Mr. Garnett Woods, President of Commerce Construction Company, was there at the time. Mr. Woods suggested to Brown and Patterson that they get a crosstie to place between the bed and frame of the truck. They could not find a crosstie. Patterson got about three boards and placed them between the frame and the bed—back where the frame of the bed and the frame of the truck met—but Woods had Patterson to move the boards up under the hoist. They checked the wires from the cab to

the hoist and found the wire which released the bed was too long. They disconnected this wire from the hoist and broke some off to shorten it. Brown was in the process of reconnecting it to the hoist when the bed came down and pinned him between the bed and the frame of the truck. Patterson got under the truck and maneuvered the lever to the hoist that made the bed stay in an up-right position. The bed raised about two feet and he went to where Brown was and he and Brown's son tried to slide Brown from between the bed and the frame, but were unable to before the bed fell the second time and struck Brown. The bed was then raised and Brown extricated. However, he was dead on arrival at the hospital.

On cross examination Patterson testified Mr. Brown was the only one near the hoist when the bed of the truck fell. He had gotten under the frame of the truck and tried to connect the wire from that position, but was unable to do so. He then placed himself between the frame and the bed. He also testified that the motor of the truck had to be running before the hoist would raise the bed; but the motor did not have to be running to release the hoist valve and let the bed come down. He further testified that at the time of the accident some debris was dumped down the chute on to the bed of the truck. No one had notified the workers who dumped the trash down the chute that they were working on the truck at the time.

Martin Brown, son of the Deceased, testified he got in the cab of the truck with Patterson the first day Patterson drove it. Patterson raised the bed, but when he tried to lower it, it would not lower. The knob which lowered the bed was out of the dash and Patterson could not get it

back in at first; but he kept working with it and finally the bed came down.

Mr. Hudson, one of the defendants, testified he and Mr. James C. Hows were partners in the masonry contracting business. The truck involved in this matter belonged to them. He had let Mr. Woods borrow the truck to move some debris from the Meigs school project. He had not made a personal inspection of the truck before turning it over to Commerce Construction Company. He further testified Batts Brothers Auto Machine Company had been instructed to keep their trucks in repair.

Wallace Webb testified he had driven this truck for three years and had had no trouble with the hoist during that time. He, also, testified that at the time he delivered the truck to Warren Patterson the knob on the dash was not extended.

Orville Batts testified he did the maintenance work on the defendants' trucks. After the accident, Mr. Hudson called him and asked him to examine the truck. He took the truck to the city dump and found it was necessary to activate a valve to the hydraulic pump to raise or lower the bed. He testified there was, ''a little trigger valve that sticks out on the hydraulic pump—and when you trip it one way it raises it and when you trip it the other way it lowers it. We raised it up and it dumped and then we lowered it back down.''

He further testified the wire from the cab of the truck is attached to a trigger valve. The wire goes through a housing and there is a clamp around the housing on the wire. He testified he found this housing had slipped a little. For this reason, the valve or hydraulic pump could not be activated from the cab. He testified all that had

to be done to correct this was to tighten the clamp on the housing. He further testified the hydraulic hoist would not work from the cab after the housing had slipped.

He, also, was asked about the safety precautions he took when he was working on a dump truck beneath the bed when raised. He said an oak four by four was placed between the bed and frame of the truck where it hinges— that is, at the apex of the "V" formed when the bed is raised. Then, two by eights or two by tens or an angle iron are placed against the floor and the top of the bed and the weight of the bed is let down enough on them to keep them from falling out.

On cross examination he testified he had not seen the truck for some two months prior to the accident. The defect he found after the accident—the housing having slipped—could have been discovered upon an inspection of the truck.

The witnesses, Patterson, Hudson, Webb, and Batts all testified that it was very dangerous to work under a raised bed of a dump truck.

In 6 Am. Jur. 284, Section 189, et seq., the general rule with respect to the duty owed by bailor to the bailee, and the difference in the duty owed by a gratuitous bailor and a bailor for hire is stated.

For the purposes of this opinion, we will consider the bailment as one for the mutual benefit of the parties as contended by plaintiff-in-error. The principles of liability are the same where the bailment is for hire or for the mutual benefit of the parties.

The authorities are in agreement that the bailor for hire, "while not an insurer of the fitness of the

subject of the bailment, is liable for personal injuries to, or the death of, the bailee or third persons proximately resulting from the dangerous or defective condition of the chattel, while it is being used for the purpose known by the bailor to be intended, where the bailor has not used reasonable care to see that the chattel, as of the time of its letting, was free from any defects or weaknesses rendering it unfit for its known intended use, unless the defect or weakness was known or was obvious to the person injured or killed so that such person could have avoided injury." 131 A. L. R., Anno. 845; Vaughn v. Millington Motor Company, 160 Tenn. 197, 22 S. W. (2d) 226; Alexander v. Walker and Isaacs, 15 Tenn. App. 388.

On page 853 of the same annotation, 131 A. L. R., it is said: "Other decisions involving miscellaneous subjects of bailment, however, in general support the rule that the bailor for hire may be held liable for personal injuries to or death of the bailee, or a third person resulting from a defect in the bailed article if such bailor failed to exercise a reasonable duty of care to ascertain if the bailed article was in fit condition for its known use, and failed to remedy or disclose the defects if they were not known or obvious to the person injured."

We are of the opinion these principles are applicable to this case. The condition of the truck of which complaint is made was as obvious to the bailee as to the bailor. When the truck was let to the bailee the wire from the hydraulic hoist to the knob in the cab was extended. At the time of the accident, Mr. Brown and Mr. Patterson had disconnected the wire to the hoist and had shortened it. When the bed came down and struck Mr. Brown, he was in the act of reconnecting the wire to the hoist. There is no evidence in the record the bed of the truck had ever

stuck before. The defendants had no notice the wire to the hoist had become extended to the extent it would not release the bed from the cab, or was likely to cause injury. There was no duty upon the bailor to repair the truck except after notice, which, according to the undisputed facts, was not given before plaintiff's husband was injured. Therefore, there was no breach of duty by the defendants.

"When the defect is disclosed to the one supplied, or is in fact discovered by him, the supplier usually is relieved of responsibility." Prosser on Torts, Second Edition, page 512.

We are clearly of the opinion the foregoing is determinant of this lawsuit. However, we think we should consider the question of intervening cause since that question was raised in the lower court and the trial judge rested his conclusions on that proposition.

██ If we were to assume defendants were negligent in furnishing the truck in the condition as shown by plaintiff's proof at the time it was let to Commerce Construction Company, then we think the trial court was correct in finding the negligent acts of Brown, his employer and fellow employees, superseded and intervened as an independent cause which released defendants as a matter of law.

In the case of Levitan v. Banniza, 34 Tenn. App. 176, 236 S. W. (2d) 90, this Court said:

"The rule relating to intervening cause is this: If the first actor is negligent, and, 'if the occurrence of the intervening cause might reasonably have been anticipated, such intervening cause will not interrupt

the connection between the original cause and the injury'."

. In 38 Am. Jur. 731, Negligence, Section 72, it is said:

"Accordingly, where the second actor, after having become aware of the existence of a potential danger created by the negligence of the first actor, acts negligently in respect of the dangerous situation and thereby brings about an accident with injurious consequences to others, the first actor is relieved of liability, because the condition created by him was merely a circumstance and not the proximate cause of the accident."

. This rule was followed by our Supreme Court in Ford Motor Company v. Wagoner, 183 Tenn. 392, 192 S. W. (2d) 840, 852, 164 A. L. R. 364, in which case it was held that the intervening actor must act with conscious regard of the first actor's negligence for the intervening cause to exculpate the original actor by breaking the causal connection between the original cause and the ultimate result.

In the case of Jones v. Hartman Beverage Company, Inc., 29 Tenn. App. 265, 203 S. W. (2d) 166, this Court said:

"The general rules as to proximate cause apply and generally if a bailor is under any circumstances answerable to third persons injured by a dangerous article or substance let by him to another, it can only be when there is no intervening human agency which might have prevented the injury."

The undisputed evidence as to any defect in the truck at the time it was let to Commerce Construction Company

was the wire from the dash to the hydraulic hoist was too long to release the bed properly.

This defect was known to Brown, Woods, and Patterson. They knew it was dangerous to work on a dump truck while the bed was raised. They knew the truck was backed to the chute at the time they were attempting to repair the truck.

Can it reasonably be insisted the acts of Brown, Woods, and Patterson in attempting to repair the truck under such obvious and dangerous circumstances could reasonably have been anticipated by the defendants? We think not.

The plaintiff relies on Levitan v. Banniza, supra, and from the holding in that case reasons thus:

"In our case the defense of intervening cause should not have been interposed by the Court because (1) Commerce Construction Company was not aware that a serious defect existed in the truck in question which would result in a malfunction. (2) The act of Commerce Construction Company thinking any trouble would be minor and trying to repair same might reasonably have been anticipated by the defendant in error since they knew the use that Commerce Construction Company intended to make of the truck."

We cannot follow this reasoning since the undisputed proof is Brown, Patterson and Woods all knew the wire to the hoist was too long to release the bed. They were conscious of the defect complained of. To say they were not aware of a serious defect; that they thought it was only a minor defect, is assuming something which does

not appear in the proof. The undisputed proof is they knew exactly what was wrong. They knew more about the condition of the truck at the time of the accident than defendants knew.

From the evidence in this case, it is clear to us that it is just as probable Mr. Brown in some manner activated the hoist and caused the bed of the truck to fall as it is the bed fell due to a malfunction of the hoist as insisted by plaintiff. He was the only one near the hoist at the time of the accident. The hoist raised the truck bed immediately after the accident. On inspection of the truck the same day of the accident, Mr. Batts found nothing wrong with the mechanism of the hoist.

"The rule is universal that no recovery can be had if the evidence leaves it to conjecture which of two probable causes resulted in the injury, where defendant was liable for only one of them." Tennessee Electric Power Company v. Van Dodson, 14 Tenn. App. 54; Phillips v. Newport, 28 Tenn. App. 187, 187 S. W. (2d) 965.

Accordingly, the first and third assignments of error are overruled.

Assignments of error two and four go to what the trial judge said in directing the jury to return a verdict for defendants. This Court is not concerned as to how the trial judge reached his conclusion. All this Court is interested in is to determine whether or not the correct conclusion was reached. T. C. A. sec. 27-117.

Therefore, assignments two and four are overruled.

Finally, it is insisted by plaintiff-in-error that the negligence of the deceased's employer cannot be

urged as a defense by the defendants. This would be true if the negligence of defendants concurred or contributed as a proximate cause of the death of plaintiff's intestate. This is not true in this case. We have found no actionable negligence on the part of the defendants.

The trial court is affirmed. The costs are adjudged against the plaintiff-in-error and the surety on her appeal bond.

Shriver and Humphreys, JJ., concur.