THOMAS PAUL LANCASTER and MRS. MARY ELLEN EASLEY

*v.*

LOUIS F. MONTESI, SR.

390 S.W.2d 217.

(*Jackson*, April Term, 1964.)

Opinion filed March 17, 1965.

Petition for Rehearing Denied May 7, 1965.

R. L. PEARSON, ARTHUR J. SHEA, Memphis, for Thomas Paul Lancaster and Mrs. Mary Ellen Easley.

JOHN M. HEISKELL, Memphis, of counsel, MONTEDONICO, BOONE, GILLILAND, HEISKELL & LOCH, Memphis, for Louis F. Montesi, Sr.

## PER CURIAM.

This appeal raises the single question of whether the wrongful acts of defendant, alleged in plaintiffs' declaration, were the proximate cause of the deceased's suicide.

The deceased, Margaret Rodell Lancaster, allegedly the paramour of the appellee Louis F. Montesi, Sr., re-

ferred to herein as defendant, committed suicide by jumping from the Memphis-Arkansas bridge in Memphis, Tennessee, on June 11, 1962. Her son, Thomas Paul Lancaster, and her mother, Mrs. Mary Ellen Easley, brought this action as next of kin for her alleged wrongful death under T.C.A. sec. 20-607.

In substance, the declaration alleged that for a considerable period of time prior to her death the deceased had been under the domination and control of defendant; that he had subjected her to punishment of the most sadistic type; that it was his design to master, possess and control her for his own illicit purposes, with the result that she had lost all ability to resist his domination and live a virtuous life; that she had been alienated and divorced from her husband; that all of this became so much of a burden on her that she finally committed suicide by jumping from the Memphis-Arkansas bridge; and that her death was negligently and willfully caused by his wrongful acts.

More specifically, the declaration alleged that during the period of their illicit relationship, the defendant "had not only used her but had inflicted, on many occasions, punishment of the most sadistic type; that he had broken her leg, burned her with a cigarette, blacked her eyes, kicked her, and caused her to be bruised and discolored over large areas"; that "on many occasions the deceased has escaped from the defendant and on one occasion had gone to the State of Alabama," only to have defendant forcibly bring her back to Memphis to continue her illicit relationship.

The declaration further alleged that on June 10, 1962, the day prior to her suicide, the defendant took deceased to Alabama where they remained overnight; that she

attempted to reach relatives, but was prevented from doing so by defendant; and that en route back to Memphis she attempted to commit suicide by leaping from the moving car in which they were traveling.

Upon their return to Memphis, defendant took the deceased to their apartment where she called a mutual friend, and in the presence of the defendant, related the abuse imposed upon her, "and stated that she was going to 'end it all' " The mutual friend talked to the defendant on the phone and asked him to hold her, take her to the hospital, do anything, but do not leave her alone, whereupon, the defendant replied: "Hell, I'm gone." He then allegedly left the apartment.

Finally, the declaration alleged that after the defendant left, the deceased wrote a suicide note in which she said: "Ma Ma, I'm sorry. Louis has beat me enough." She then left the apartment and went to the Memphis-Arkansas bridge where she took her life.

Defendant filed a demurrer asserting that his alleged wrongful conduct was not, as a matter of law, a proximate cause of the deceased's death, and that the declaration, therefore, did not state a cause of action. The trial court, W. E. Quick, Judge, ruled in favor of the defendant, sustained the demurrer, and dismissed the action.

Plaintiffs appealed, insisting that under the peculiar circumstances of the case, decedent's act of jumping from the bridge was not an efficient intervening cause which would interrupt the causation and excuse defendant, and the defendant's acts were, therefore, the proximate cause of the suicide.

Since this case is in this Court on a demurrer to the declaration which was sustained by the trial court,

if there is any possible ground on which a cause of action may be predicated, we must reverse the trial court and remand for trial. *Byrd v. Pioneer-Jellico Coal Co.,* 180 Tenn. 396, 175 S.W.2d 542 (1943); *Lazarov v. Nunnally,* 188 Tenn. 145, 217 S.W.2d 11 (1949).

■ One's first inquiry, in analyzing a situation such as is before us, is whether the alleged acts of defendant were a cause in fact of the injury. "If that inquiry shows that defendant's conduct, in point of fact, was not a factor in causing plaintiff's damage, that ends the matter. But if it shows his conduct was a factor in causing plaintiff's damage, then the further question is whether his conduct played such a part in causing the damage as makes him in the eye of the law the author of such damage and liable therefor." *Carney v. Goodman,* 38 Tenn. App. 55, 61, 270 S.W.2d 572, 575 (1954).

Since the sole ground of the demurrer was that his conduct was not the proximate cause, we need only consider "whether his conduct played such a part in causing the damage as makes him in the eye of the law the author of such damage and liable therefor."

■ ■ In deciding proximate, or legal, causation, it must first be determined whether the defendant owed a duty to the plaintiff, and thus whether there was any negligence. Foreseeability is the test for negligence, and the inquiry is whether defendant's conduct created an unreasonable risk of harm to plaintiff. *Spivey v. St. Thomas Hospital,* 31 Tenn.App. 12, 25, 211 S.W.2d 450 (1947).

■ If the injury to plaintiff could have been foreseen or anticipated by defendant, then there is a duty to use

care, and negligence may be established. *Gentry v. Taylor,* 182 Tenn. 223, 185 S.W.2d 521 (1945).

█ Moreover, if the defendant could have foreseen that some such harm of like general character might result to plaintiff from defendant's acts, and that the injury was within the reasonable range of the risk created by such acts, a duty exists. *Friendship Tel. Co. v. Russom,* 43 Tenn.App. 441, 451-452, 309 S.W.2d 416 (1957); *Inter City Trucking Co. v. Daniels,* 181 Tenn. 126, 178 S.W.2d 756 (1944). Harm in the abstract, not harm in the concrete, is the idea. 1 Street, Foundations of Legal Liability, at 104.

█ Once a duty to plaintiff is established, and negligence of the defendant established, the ultimate question is whether the negligence of defendant was the proximate or legal cause. Before considering the matter further, the following quotation from Street, supra, at page 10, should be noted:

"The terms 'proximate' and 'remote' are thus respectively applied to recoverable and non-recoverable damage. The question whether damage in a given case is proximate or remote is one of great importance. It is a question of substantive law, and the determination of it determines legal right. It is unfortunate that no definite principle can be laid down by which to determine this question. It is always to be determined on the facts of each case upon mixed considerations of logic, common sense, justice, policy, and precedent. About all that can here be safely ventured is found in an observation of Appleton, C. J., to the effect that: 'Ordinarily that condition is usually termed the cause whose share in the matter is the most conspicuous and is the most immediately preceding and proximate to

the event.' The best use that can be made of the authorities on proximate cause is merely to furnish illustrations of situations which judicious men upon careful consideration have adjudged to be on one side of the line or the other.''

■ The negligent act of defendant, to be the legal cause of plaintiff's injuries, need not be the sole cause. It is sufficient if such act was a substantial factor in causing the harm. *Waller v. Skeleton,* 31 Tenn.App. 103, 115, 212 S.W.2d 690 (1948).

However, there may be conduct, either by plaintiff or a third party, of such nature as to break the chain of causation between defendant's act and the harm, and so relieve the defendant of liability. Such conduct is known in the vernacular of the law as an independent, intervening cause.

■ The same rule of foreseeability is applied to intervening cause. The defendant, in order to be liable, must have been able to anticipate or reasonably foresee what usually will happen. *Ford Motor Co. v. Wagoner,* 183 Tenn. 392, 399, 192 S.W.2d 840, 852, 164 R.L.R. 364 (1946). The rule ''does not require him to anticipate and provide against, what is unusual or * * * remotely possible, but whether it was probable according to the usual experience of persons.'' *Ward v. Univ. of the South,* 209 Tenn. 412, 423-424, 354 S.W.2d 246, 250 (1962).

■ Dean Prosser succinctly sums up the rule as follows:

''An intervening cause is one which comes into active operation in producing the result after the actor's negligent act or omission has occurred.

"The defendant ordinarily will not be relieved of liability by an intervening cause which could reasonably have been foreseen, nor by one which is a normal incident of the risk created.

"The defendant will ordinarily be relieved of liability by an unforeseeable and abnormal intervening cause which produces a result which could not have been foreseen." Prosser on Torts (1955 ed.), sec. 49.

See *Moody v. Gulf Refining Co.,* 142 Tenn. 280, 293, 294, 218 S.W. 817, 8 A.L.R. 1243 (1919); *Jones v. Stewart,* 183 Tenn. 176, 181, 191 S.W.2d 439 (1946); *Louisville & Nashville R. R. v. Head,* 46 Tenn.App. 612, 332 S.W.2d 682 (1959); *Brown v. Hudson,* 50 Tenn.App. 658, 363 S.W.2d 505 (1962).

In an action for wrongful death, where the intervening cause relied on takes the form of suicide, then the cases both in this jurisdiction and elsewhere have generally held there to be no liability. It is only when the deceased was insane or in a frenzy at the time of death, as a result of the negligence, that some courts have been willing to hold that the proximate cause of the death was the defendant's wrongful act. See Annotation, 11 A.L.R. 2d 751.

Dean Prosser, in his discussion of Intervening Causes, sec. 49 of Prosser on Torts (1955), has this to say pertinent to our consideration of the problem:

"Some difficulty has arisen in cases where the injured person becomes insane and commits suicide. Although there are cases to the contrary, it seems the better view that when his insanity prevents him from realizing the nature of his act or controlling his conduct, his suicide is to be regarded either as a direct result and

no intervening force at all, or as a normal incident of the risk, for which the defendant will be liable. *The situation is the same as if he should hurt himself during unconsciousness or delirium brought on by the injury.* But if the suicide is during a lucid interval, when he is in full command of his faculties but his life has become unendurable to him, it is agreed that his voluntary choice is an abnormal thing, which supersedes the defendant's liability." Prosser at page 273-274.

In the case of *Jones v. Stewart,* supra, a young lad of 18 years was falsely accused by his father of breaking into his father's home and stealing, and allegedly as a result thereof, the young lad committed suicide. Mr. Justice Tomlinson, speaking for the Court, affirmed the judgment of the trial court in sustaining a demurrer to a cause of action for wrongful death. The Court relied on several decisions in foreign jurisdictions where liability had been denied under similar circumstances, and quoted from *Salsedo v. Palmer,* 278 F. 92, 99 (2d Cir., 1921):

" 'An act of suicide resulting from a moderately intelligent power of choice, even though the choice is determined by a disordered mind, should be deemed a new and independent, efficient cause of the death that immediately ensues.' " 183 Tenn. at 179, 191 S.W.2d at 440. The Court declared these decisions from foreign jurisdictions "resulted from the necessary application of the general rule which has always prevailed in Tennessee," and was stated by our Supreme Court in *Chattanooga Light & Power Co. v. Hodges,* 109 Tenn. 331, 70 S.W. 616, 60 L.R.A. 459.

In *Eckerd's, Inc. v. McGhee,* 19 Tenn. App. 277, 86 S.W.2d 570 (1935), the defendant was accused of selling a poison to plaintiff, a minor, in violation of a statute making such a sale to a minor negligence per se. Plaintiff alleged that in a fit of despondency, while she was temporarily insane and not able to comprehend what she was doing, she purchased the poison from defendant and took same, and that defendant's negligence was the proximate cause of her injury.

The court, in holding for the defendant, stated:

"In the instant case, we are of the opinion that the act of Martha McGee in swallowing the bichloride tablets and iodine was the proximate cause of her injuries, *unless her reason and memory were, at the time, so far obscured that she did not know and understand what she was doing, and was, therefore, not a responsible human agency.*" 19 Tenn. App. 287, 86 S.W.2d 575 (italics ours).

Applying the reasoning of these cases to the one at bar, we think that the demurrer to the declaration of plaintiffs was properly sustained.

The strongest possible construction of the facts as alleged is that the deceased was tired of her situation in life, and that it had become unendurable to her, and that she wrote a note to her mother in which she said, "Ma Ma, I'm sorry. Louis has beat me enough." That then, she left her apartment and went to the Memphis-Arkansas bridge, and took her own life. Although it is alleged that she was "bereft of reason," it cannot be said that she did not know and understand the nature of her act. *Eckerd's, Inc. v. McGhee,* supra.

Whether a declaration states a cause of action is to be determined by a consideration of the facts alleged,

*Evans v. Thompson,* 59 Tenn. (12 Heiskell) 534, 546 (1873), not the conclusions of the pleader.

We think that the facts alleged here establish an efficient, intervening, and unforeseeable cause. Thus, the proximate, or legal, cause of the harm complained of was the voluntary and free act of the deceased in taking her own life. Her voluntary act was an abnormal thing, which supersedes defendant's liability. Prosser, supra, sec. 49.

For these reasons, the judgment of the trial court in dismissing the action is affirmed, with costs adjudged against appellants.

## Petition to Rehear

The plaintiffs, Thomas Paul Lancaster and Mrs. Mary Ellen Easley, have filed a courteous petition to rehear. This petition again argues the position taken by these parties in the original hearing and does not present any new matter not considered by the Court in our original opinion. For this reason the petition is denied.