| | | |
|---|---|---|
| DEBORAH MURRAY, | ) | DAVIDSON CIRCUIT |
|     Administrator Ad Litem of the | ) | No.   95C-1267 |
|     Estate of Terrance Murray | ) | |
|     and as Next of Kin of | ) | |
|     Terrance Murray, | ) | |
| | ) | |
|     Plaintiff/Appellant | ) | |
| | ) | |
| VS. | ) | Appeal No. |
| | ) | 01A01-9704-CV-00146 |
| JEREMY A. BRYANT, | ) | |
| LILLIAN BRYANT-MILLER, | ) | |
| KATHY HERBST, CHARLIE HERBST, | ) | |
| | ) | |
|     Defendants | ) | |
| | ) | |
| METROPOLITAN GOVERNMENT | ) | |
| OF NASHVILLE and | ) | |
| DAVIDSON COUNTY, TENNESSEE, | ) | |
| | ) | |
|     Defendants/Appellees | ) | |

FILED

October 3, 1997

Cecil W. Crowson
Appellate Court Clerk

IN THE COURT OF APPEALS OF TENNESSEE
MIDDLE SECTION AT NASHVILLE


APPEAL FROM THE CIRCUIT COURT OF DAVIDSON COUNTY
AT NASHVILLE, TENNESSEE


**HONORABLE BARBARA N. HAYNES, JUDGE**


Jerry L. Maynard, II
1907 Old Murfreesboro Pk.
Nashville, Tennessee 37217
ATTORNEY FOR PLAINTIFF/APPELLANT

James L. Murphy, III, Director
James L. Charles, Associate
Martha Zendlovitz, Associate
Wm. Michael Safley, Associate
Department of Law of the
Metropolitan Government of
Nashville and Davidson County
204 Metropolitan Courthouse
Nashville, TN 37201
ATTORNEYS FOR DEFENDANTS/APPELLEES


**AFFIRMED AND REMANDED**

WILLIAM H. INMAN, SENIOR JUDGE


CONCUR:
HENRY F. TODD, PRESIDING JUDGE, MIDDLE SECTION
WILLIAM C. KOCH, JR., JUDGE

| | | |
|---|---|---|
| DEBORAH MURRAY, | ) | DAVIDSON CIRCUIT |
| Administrator Ad Litem of the | ) | No. 95C-1267 |
| Estate of Terrance Murray | ) | |
| and as Next of Kin of | ) | |
| Terrance Murray, | ) | |
| | ) | |
| Plaintiff/Appellant | ) | |
| | ) | |
| VS. | ) | Appeal No. |
| | ) | 01A01-9704-CV-00146 |
| JEREMY A. BRYANT, | ) | |
| LILLIAN BRYANT-MILLER, | ) | |
| KATHY HERBST, CHARLIE HERBST, | ) | |
| | ) | |
| Defendants | ) | |
| | ) | |
| METROPOLITAN GOVERNMENT | ) | |
| OF NASHVILLE and | ) | |
| DAVIDSON COUNTY, TENNESSEE, | ) | |
| | ) | |
| Defendants/Appellees | ) | |

## O P I N I O N

This is an action for damages against the Metropolitan Government and other Defendants, alleging that they are liable for the death of Plaintiff's son, Terrance Murray, who was shot and killed by a fellow student while attending J. T. Moore Middle School in Nashville, Tennessee, on April 21, 1994.

The case was dismissed as to all defendants except Jeremy A. Bryant, Lillian Bryant-Miller, Kathy Herbst, and Charlie Herbst, against whom claims are still pending. The plaintiff appeals only from the dismissal of the Metropolitan Government and, as to it, the only claims appealed are those brought pursuant to the Governmental Tort Liability Act. In the present posture of the case, there are three disparate theories under which Plaintiff seeks to onerate the Metropolitan Government for the death of Terrance Murray.

First, Plaintiff alleges that the Metropolitan Government, the Board of Education, and its Director, Richard C. Benjamin, have a duty to protect students in the Metropolitan School System from dangers posed by weapons in the hands of students, and that they breached this duty by failing to develop, implement, and fund

2

policies adequate to protect pupils from death or injury caused by dangerous weapons and firearms. Specifically, as to these Defendants, the Plaintiff alleges that:

> "By virtue of the tender age of the pupils attending John Trotwood Moore Middle School, by virtue of the fact that the parents of said pupils are required by TCA § 49-6-3001 to deliver said pupils into the custody of the school during school hours, and by virtue of the fact that the Defendants herein stand in loco parentis to such pupils, Defendants, owed a duty to the pupils of John Trotwood Moore Middle School, including the decedent, Terrance Murray, to exercise reasonable care to protect such pupils from dangerous weapons and firearms, and in order to fulfill said duty, owed a duty to said pupils to develop, execute, implement, and fund policies to adequately protect said pupils from dangerous weapons and firearms with regard to the circumstances under which a pupil could safely attend school without injury from and/or exposure to dangerous weapons and firearms."

The Plaintiff alleges that the Metropolitan Government:

> "[H]ad a duty to Plaintiff, Plaintiff's decedent, and others to protect the children enrolled and attending school, from dangerous weapons."

> [B]reached its duty to Plaintiff by failing to institute, promulgate, publish, enforce and/or fund a policy of security in all cases whereby dangerous weapons could be detected and where criminal conduct would be reasonably assumed.

> [B] reached its duty to Plaintiff by allowing, ratifying, and condoning Defendant Board's inaction in not instituting, promulgating, publishing, funding and/or enforcing a policy of security in all cases whereby dangerous weapons could be detected and where criminal conduct would be reasonably assumed.

> [F]ailed to implement, recommend, and/or fund a policy protecting children from dangerous weapons while attending school. By its inaction, Defendant Metro chose not to institute, promulgate, recommend, publish, fund and/or enforce a policy of security in all cases whereby dangerous weapons could be detected and where criminal conduct would be reasonably assumed.

> [H]ad a duty to Plaintiff, Plaintiff's decedent, and others to protect the children enrolled and attending public school, from dangerous weapons, as a matter incident to the management and control of John Trotwood Moore Middle School."

The Plaintiff alleges that Defendant Board of Education:

> "[F]ailed to implement and/or fund a policy protecting children from dangerous weapons while attending school. By its inaction, Defendant Board chose not to institute, promulgate, fund, publish, and/or enforce a policy of security in all cases whereby dangerous weapons could be detected and where criminal conduct would be reasonably assumed.

> [H]ad a duty to Plaintiff, Plaintiff's decedent, and others, to protect the children enrolled and attending public school, from dangerous weapons, as a matter incident to the management and control of John Trotwood Moore Middle School."

3

In reference to Defendant Benjamin, she alleges:

> "Defendant Benjamin failed to implement or recommend a policy protecting children from dangerous weapons while attending school. By this inaction, Defendant Benjamin chose not to institute, promulgate, recommend, publish and/or enforce a policy of security in all cases whereby dangerous weapons could be detected and where criminal conduct would be reasonably assumed.
>
> Defendant Benjamin had a duty to Plaintiff, Plaintiff's decedent, and others to protect the children enrolled and attending public school, from dangerous weapons, as a matter incident to the management and control of John Trotwood Moore Middle School."

Second, Plaintiff alleges that Therese Pruitt, an employee of the Metropolitan Government, was negligent in failing to properly supervise Defendants Herbst, Bryant, and Terrence Murray, with such negligence being the proximate cause of the latter's death. In this regard, she alleges:

> "Defendant Pruitt was charged with supervision of the music class held on April 21, 1995 at John Trotwood Moore Middle School, in which decedent was enrolled, whereby she failed and neglected to properly supervise Defendant Bryant and Defendant Herbst, thereby being the proximate cause of decedent's death.
>
> According to the Educational Agreement of the Metropolitan Board of Public Education and Metropolitan Nashville Education Association, Section V Teacher Workday, Responsibilities and Duties, Defendant Pruitt is responsible for the general supervision of pupils enrolled in the school where the teacher is a member of the faculty. Defendant Pruitt violated this rule promulgated by the Board of Education by failing and neglecting to properly supervise decedent and Defendant Bryant, thereby being the proximate cause of decedent's death.
>
> According to the Education Agreement of the Metropolitan Board of Public Education and Metropolitan Nashville Education Association, Section II (1), a teacher is responsible for maintaining discipline and a climate for good instruction in the classroom through effective teaching, leadership techniques, and application of classroom management procedures in accordance with the policies, rules and regulations of the Board of Education. Defendant Pruitt violated this rule promulgated by the Board of Education by failing and neglecting to properly supervise decedent and Defendant Bryant, thereby being the proximate cause of decedent's death."

The Plaintiff's third theory concerns the actions of L. C. Batson. She alleges that:

> "Defendant Batson breached his duty to supervise and manage the personnel of John Trotwood Moore Middle School, specifically Defendant Pruitt who failed and neglected to properly supervise decedent and Defendant Bryant, thereby being the proximate cause of decedent's death.

4

Defendant Batson had full knowledge that Defendant Herbst had previously committed acts of misconduct and violence and that such acts indicated a persistent course of violent conduct. Defendant Batson, nevertheless, negligently allowed Defendant Herbst to transport a loaded firearm to John Trotwood Moore Middle School on or about April 21, 1994, and thereby recklessly facilitated, sanctioned, ratified and consented to the wrongful acts committed against decedent by Defendant Bryant."

The material facts are not markedly in controversy.

On April 21, 1994, Defendant Charlie Herbst brought a .25 caliber firearm to J. T. Moore Middle School. He gave it to a fellow student, Defendant Jeremy Bryant. Terrance Murray and Defendant Bryant were attending a regularly scheduled seventh grade music class taught by Therese A. Pruitt, during which they were viewing a video tape of *Beauty and the Beast*. At some point during the class, Defendant Bryant took the gun out of his pocket, covered it with his jacket, and placed it on his desk. He then began handling the firearm and it discharged. The bullet struck Terrance Murray in the head, killing him.

L. C. Batson was the principal at J. T. Moore. During his twelve years as principal at that school, he had dealt with the report of a gun being brought into the school on three occasions. Charlie Herbst did not know of any student, other than himself, who had brought a weapon into the school, and he had never heard about weapons being brought into the school. He said that Jeremy Bryant asked him to bring the gun to school, which he carried in his pocket. He was wearing shorts that "sag off a lot." He travels to school in a wheelchair which is loaded and unloaded on the bus by lift, and he never gets out of the chair. He gave the gun to Jeremy Bryant in the bathroom at the start of the school day. Bryant removed the clip and placed it in a zippered pocket on his jacket, but he placed the gun in another pocket.

There is no evidence that Batson or any of the teachers at J. T. Moore knew that Charlie Herbst had brought a gun to school. Neither Batson nor Pruitt had any knowledge that Charlie Herbst or Jeremy Bryant had ever brought a gun into J. T. Moore or any other school. Other than an incident in March 1992 involving a gun replica that was not fireable, Batson ". . . had never retrieved one, seen one, confiscated one, or had one turned in to [him]." Guns were never a problem at J. T. Moore Middle School, according to the unrefuted evidence.

5

Jeremy Bryant had never demonstrated any sort of violent behavior at J. T. Moore. The only problem Ms. Pruitt ever encountered with him was one incident of rudeness. He had only two other office referrals -- one for lying and one for walking off when the teacher told him to stay in a particular location.

Although Charlie Herbst was a student in another of Therese Pruitt's music classes, she had never had any problems with him. L.C. Batson was aware of problems with Charlie Herbst regarding a failure to do homework. He did not, however, have any knowledge of violent behavior by Charlie Herbst at the school or of any history of violent behavior at any other school.

The foregoing recitations constituted the factual posture of the case against the Metropolitan Government upon the filing of the motion to dismiss or alternatively for summary judgment pursuant to RULES 12.02(6) and 56, TENN. R. CIV. P. The defendant asserted that there is no genuine issue as to any material fact, thus entitling it to a dismissal under RULE 56, and that it was immune from liability under the Tennessee Governmental Tort Liability Act, TENN. CODE ANN. § 29-20-201 *et seq.,* thus entitling it to a dismissal under RULE 12.02(6).

The trial judge ruled:

"The Metropolitan Government has not waived its immunity from suit for injury proximately caused by a negligent act or omission of any employee within the scope of his employment if the injury arises out of the exercise or performance, or the failure to exercise a discretionary function, whether or not the discretion is abused. The Metropolitan Government, pursuant to T.C.A. § 29-20-205(1), is entitled to discretionary function immunity because the decision to implement security measures involves planning or policy-making decisions. Further, before random searches of lockers or students can be conducted, T.C.A. § 49-6-4204 and T.C.A. § 4205 require that the principal of a school make a determination, in his discretion, that individual circumstances at his school warrant such a search. The proof before the Court is that the principal, Dr. L. C. Batson, did not consider weapons to be a problem at John Trotwood Moore Middle School and that he did not believe individual circumstances at his school justified random searches of lockers or students.

The Metropolitan Government is also immune from liability pursuant to the public duty doctrine because the Metropolitan Government did not owe a special duty to Terrance Murray, beyond that owed to all students, to protect him from the acts of third parties in illegally carrying a gun to school, possessing one on school grounds and shooting it.

The allegation of infliction of mental anguish must be dismissed because the Metropolitan Government has not waived its immunity from suit for the negligent infliction of mental anguish by its employees as set forth in T.C.A. § 29-20-205(2).

Finally, it was not foreseeable that Terrence Murray would be shot at John Trotwood Moore Middle School by fellow student, Jeremy Bryant. Thus, the actions of Dr. Richard Benjamin, Dr. L.C. Batson, and/or Therese A. Pruitt were not the proximate cause of any injuries suffered by the Plaintiff.

For all of the reasons stated herein, the Metropolitan Government is entitled to the granting of their motion for summary judgment and the dismissal of all claims."

The plaintiff appeals and presents for review the issues of:

I.      "Whether the trial Court erred in finding that the Defendant is immune from liability for the shooting death of Terrance Murray under Discretionary Function Immunity."

II.     "Whether the Trial Court Erred in finding that Defendant's negligent acts and omissions were not the proximate cause of Plaintiff's injuries.

Our review is *de novo*, with no presumption of correctness of the decision of the trial court. *Carvell v. Bottoms,* 900 S.W.2d 23 (Tenn. 1995).

The appellant argues that the School Security Act of 1981 requires each school district to implement security measures by searching persons, lockers, containers, and automobiles for dangerous weapons and drugs "to secure order and protect students from harm while in their custody." She says that she placed her son's life and safety into the care of the school system and that he was slain because the system failed to implement any policy or measure for the removal of or to assure the absence of weapons on school property.

This action is governed by the Tennessee Governmental Tort Liability Act, TENN. CODE ANN. § 29-20-10 *et seq.* Because the Act is in derogation of the immunity enjoyed by the government under common law, it must be strictly construed. *Lockhart v. Jackson-Madison,* 793 S.W.2d 943 (Tenn. Ct. App. 1990). The government is immune from liability for a tort unless its immunity is removed by the Act. TENN. CODE ANN. § 29-20-201. But immunity is not removed for injuries caused by discretionary actions of employees. TENN. CODE ANN. § 29-20-205. As stated in *Bowers v. City of Chattanooga,* 826 S.W.2d 427 (Tenn. 1992), the classification of functions as governmental/proprietary or discretionary/ministerial is imprecise; accordingly, the Court in *Bowers* pronounced a test to determine which

7

acts give rise to immunity by distinguishing those performed at the 'planning' level from those performed at the 'operational' level. The Court stated:

> "Under the planning-operational test, decisions that rise to the level of planning or policy-making are considered discretionary acts which do not give rise to tort liability, while decisions that are merely operational are not considered discretionary acts and, therefore, do not give rise to immunity. *See Carlson v. State,* 598 P.2d 969, 972 (Alaska 1979). The distinction between planning and operational depends on the type of decision rather than merely the identity of the decision maker. *See id.* We caution that this distinction serves only to aid in determining when discretionary function immunity applies; discretionary function immunity attaches to all conduct properly involving the balancing of policy considerations. Therefore, there may be occasions where an "operational act" is entitled to immunity, where, for instance, the operational actor is properly charged with balancing policy considerations. *See United States v. Gaubert,* 499 U.S. ___, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991) (recognizing that operational activities grounded in policy are entitled to discretionary function immunity.)
>
> Under the planning-operational test, discretionary function immunity does not automatically attach to all acts involving choice or judgment. Such an analysis recognizes that, to some extent, every act involves discretion. Rather, the underlying policy of governmental immunity is better served by examining (1) the decision-making process and (2) the propriety of judicial review of the resulting decision. *Cf. Peavler,* 528 N.E.2d at 46 (examining the nature of the conduct, its effect on governmental operations, and the capacity of a court to evaluate the decision).
>
> A consideration of the decision-making process, as well as the factors influencing a particular decision, will often reveal whether that decision is to be viewed as planning or operational. If a particular course of conduct is determined after consideration or debate by an individual or group charged with the formulation of plans or policies, it strongly suggests the result is a planning decision. These decisions often result from assessing priorities; allocating resources; developing policies; or establishing plans, specifications, or schedules. *See id.*
>
> On the other hand, a decision resulting from a determination based on preexisting laws, regulations, policies, or standards, usually indicates that its maker is performing an operational act. Similarly operational are those ad hoc decisions made by an individual or group not charged with the development of plans or policies. These operational acts, which often implement prior planning decisions, are not "discretionary functions" within the meaning of the Tennessee Governmental Tort Liability Act. In other words, "the discretionary function exception [will] not apply to a claim that government employees failed to comply with regulations or policies designed to guide their actions in a particular situation. *Aslakson v. United States,* 790 F.2d 688, 692 (8th Cir.1986).
>
> Another factor bearing on whether an act should be considered planning or operational is whether the decision is the type properly reviewable by the courts. The discretionary function exception "recognizes that courts are ill-equipped to investigate and balance the numerous factors that go into an executive or legislative decision" and therefore allows the government to operate without undue interference by the courts.

An injury which arguably arises from a decision of the Board of Education or its employees with regard to the formulation and implementation of a security policy requiring the allocation of time and resources may not be redressed in a tort action because it falls within discretionary function immunity. *See Doe v. Bd. of Ed. of Memphis City Schools*, 799 S.W.2d 246 (Tenn. Ct. App. 1990).

The appellant argues that since Tenn. Code Ann. § 49-6-4203(a)(1) provides that "the removal of dangerous weapons . . . from school property is necessary to lessen the hazards to students" and that such removal can only be accomplished by searches of areas of the school buildings or grounds where such materials may be stored, the failure of the government to establish a search policy or to implement a search is a violation of the Act and thus was a proximate cause of the death of her son. But the Act itself recognizes the need for reposed discretion. Tenn. Code Ann. § 49-6-4203(e)(2) provides that "on occasions when the use of dangerous weapons . . . has reached a life or health threatening level, searches of the students themselves may be necessary . . . ." The section immediately following provides that "individual circumstances . . . require that . . . principals must be relied on to exercise their professionally trained judgments in determining what action is appropriate . . ."

The evidence clearly reveals that the use of dangerous weapons had not reached a life or health threatening level at the J. T. Moore School. Even so, we agree with the appellees that the Act does not require the local school system to provide measures for the removal of weapons and does not require the search of lockers, persons, or vehicles to determine if dangerous weapons are present.

Lastly, the appellant charges that the teacher, Ms. Pruitt, negligently failed to supervise Herbst, Bryant, and Murray, which failure is alleged to have been the proximate cause of the death of her son. Concomitantly, she alleges that a supervising employer, Mr. Batson, breached his duty to supervise her son and Bryant, in that Batson negligently allowed Herbst to transport a loaded firearm to the school.

In the first instance, there is no evidence of negligent supervision. Moreover, the evidence affirmatively shows that these supervisors were free of negligence and

had no reason to believe that Herbst brought a pistol to school.  It is true that teachers must conform to a 'standard of reasonable and ordinary care' under the circumstances to their students, *Hawkins County v. Davis,* 391 S.W.2d 568 (Tenn. 1965), but there was no showing in this record that the standard was breached.  There is no evidence that the supervisors should have foreseen that Herbst would bring a pistol to school, and foreseeability is the test for negligence.  *Lancaster v. Montese,* 390 S.W.2d 217 (Tenn. 1965).  *See, Chudasama v. Metropolitan Govt.,* 914 S.W.2d 922 (Tenn. Ct. App. 1996).

We affirm the judgment at the costs of the appellant.

_____
William H. Inman, Senior Judge

CONCUR:

_____
Henry F. Todd, Presiding Judge, Middle Section

_____
William C. Koch, Jr., Judge

10