JONES *v.* STEWART.

(*Nashville,* December Term, 1945.)

Opinion filed January 5, 1946.

WORTH BRYANT and F. E. HARRIS, both of Cookeville, for plaintiff in error.

KEITH BOHANNON, of Cookeville, for defendant in error.

MR. SPECIAL JUSTICE PRIDE TOMLINSON delivered the opinion of the Court.

The only question presented on this appeal is whether the Circuit Court erred in sustaining a demurrer to the declaration. The only ground of the demurrer is that "the declaration failed to state a cause of action." The action was commenced by plaintiff in error as administrator of the estate of his deceased son, J. L. Jones.

The declaration alleged that the deceased was an upright, sober and industrious boy eighteen years of age and "was a boy of good standing and reputation." It further alleged that the defendant in error, Alvin Stewart, had on some date, unspecified in the declaration, accused this youth of "breaking in his house and stealing somewhere from $70.00 to $75.00," and that the accusation was false and made without any fact to justify it, and "without reasonable or probable cause for believing the truth of same," and that as a consequence his son, the deceased, "was so shocked and frightened with this charge of crime, it came to be more than he could endure," and on the morning of September 14, 1944, he "committed suicide," having hung himself with a rope in a barn near his home. It further alleged that this suicide was the result of this accusation by defendant. It was further alleged that on the day before his death the deceased met some friends and while with them cried and otherwise exhibited signs of great distress and, in the language of the declaration, "took a ring from his finger and

placed it on the finger of his girl friend, saying at the time, he would not need it any longer and wept bitterly, and they wanted to know if he was leaving or where he was going, and he replied,—they would find out.''

■ It, therefore, appears that the deceased planned and accomplished suicide because the defendant had falsely, and without reasonable or probable cause for believing it, accused him of having been guilty of house breaking and larceny. Thus, the sole question for determination is whether the estate of one who deliberately plans to and does commit suicide because he is falsely charged with the commission of an infamous felony can, as a matter of law, maintain an action for damages for the death of that suicide against the person who falsely, wrongfully and without reasonable cause made the accusation. The action cannot, of course, be maintained if it appears on the face of the declaration that the wrong alleged was not a proximate cause, within the legal definition of that term, of the death for which damages are sought. In so far as we have been able to ascertain, there has not heretofore been presented to this Court the question of whether such a tort as that alleged in this declaration as a matter of law, can be a proximate cause of the subsequent suicide of the person wronged by the alleged tort. The question has arisen in some other jurisdictions and decisions on this question are assembled in *Salsedo* v. *Palmer,* 278 F. 92, 23 A. L. R., commencing at page 1262.

The United States Circuit Court of Appeals in sustaining a demurrer to the declaration in a case arising in the State of New York under a statute practically identical with our statute permitting administrators to maintain an action for damages for the death of his intestate said:

"We may say in conclusion that we concede that a course of either mental or physical torture, or of both combined, may cause a death. And we also concede that the same course or courses of torture may produce a frame of mind that desires death as a means of relief. It is conceivable, therefore, that a tortured man may kill himself. But, if he so kills himself deliberately, we hold that there is an intervening act of his own will for which the New York act affords no remedy. If, on the other hand, it is contended that his self-killing is not his own act, but is the result of suicidal mania, we hold that suicidal mania is not a natural or reasonable result of either mental or physical torture. It is a most unreasonable inference, it seems to us, to say that suicidal mania can be regarded as the natural and probable consequence of either mental or physical torture. So that, if the man does not kill himself deliberately, but his death is due to suicidal mania, which results from torture, we hold that the act of suicide cannot be regarded as the natural and reasonable result of the torture or misconduct alleged, and that the New York act affords no remedy." *Salsedo* v. *Palmer*, 2 Cir., 278 F. 92, 99, 23 A. L. R. 1262, 1269.

In that case the court quoted from the opinion of Masschusetts court in the case of *Daniels* v. *New York*, etc., 183 Mass. 393, 400, 67 N. E. 424, 62 L. R. A. 751, as follows:

"An act of suicide resulting from a moderately intelligent power of choice, even though the choice is determined by a disordered mind, should be deemed a new and independent, efficient cause of the death that immediately ensues."

The Supreme Court of Georgia, in sustaining a demurrer to a declaration seeking damages for the death by suicide of plaintiff's intestate and in which declaration

it was alleged as the cause of action that the deceased committed suicide because of a letter written by defendant falsely charging by necessary inference the deceased with the commission of a crime, said:

"We do not think that it can be charged, so as to withstand a general demurrer, that the letter which was written to and received by the decedent was the cause of the unfortunate man's act in taking the drug. . . . While the state of mind produced in the decedent, and as a result of which it is charged that he took the fatal potion, may be to some extent traceable to the reading of the letter, it cannot be said to be the legal and natural result of the act of the defendants." *Stevens* v. *Steadman,* 140 Ga. 680, 684-685, 79 S. E. 564, 566, 47 L. R. A. (N. S.) 1009.

We find no decisions to the contrary based on similar facts to those above cited and quoted from. Those decisions resulted from the necessary application of the general rule which has always prevailed in Tennessee, and stated by this Court in the following language:

"On the other hand, where the result is such that no reasonable man would expect it to occur, and no knowledge is shown in the person doing the negligent or wrongful act that such a state of things exists as to make the damage probable, we think the rule is that the injury will not be regarded as actionable as against the wrong-doer. *Sharp* v. *Powell,* L. R., 7 C. P. 253. And especially should this be true where the injury results from an act committed by the injured party so obviously fraught with peril as should be sufficient to deter one of reasonable intelligence. In such a case it would seem impossible to find any ground upon which to maintain that the person guilty of the first act of negligence should be held liable to the party so injured, and the law, upon uncontroverted

evidence showing such facts, without more, should relieve the original wrongdoer from liability. In such a case the intervening act of the party injured should be treated as the proximate cause of the injury." *Chattanooga Light & Power Co.* v. *Hodges,* 109 Tenn. 331, 339, 70 S. W. 616, 618, 60 L. R. A. 459, 97 Am. St. Rep. 844.

This rule is conclusive, we think, of the instant case. No reasonable person would have expected this young man to commit such a tragic and unnatural act because he was falsely charged with a crime. It was contrary to human experience and the result of a deliberate independent act of the deceased for the very purpose of accomplishing the death for which damages are sought. This intervening act of the deceased, and not the tort of the defendant, must be regarded as the sole proximate cause of that death. It follows that the assignment of error must be overruled and the judgment of the court below sustaining the demurrer affirmed. The plaintiff will pay all costs of this appeal.

PREWITT, J., did not participate in the decision of this case.

Note:—Hon. PRIDE TOMLINSON, of the Columbia Bar, sat as Special Justice in this case during the illness of MR. CHIEF JUSTICE GREEN.