August 31, 1998

FOR PUBLICATION

IN THE SUPREME COURT OF TENNESSEE

FILED

AT JACKSON

**August 31, 1998**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

BARBARA WHITE, as the               )
Administratrix of the Estate        )
of Earl R. White, deceased,         )
                                    )   Carroll Circuit
        Plaintiff/Appellant,        )
                                    )   Hon. Julian P. Guinn, Judge
                                    )
v.                                  )   No. 02S01-9701-CV-00007
                                    )
                                    )
WILLIAM H. LAWRENCE, M.D.,           )
                                    )
        Defendant/Appellee.         )


For Plaintiff-Appellant:              For Defendant-Appellee:

David L. Cooper                       Jerry D. Kizer, Jr.
John M. Cannon                        Patrick W. Rogers
Columba A. Mchale                     Rainey, Kizer, Butler,
Cannon, Cannon & Copper, P.C.         Reviere & Bell, P.L.C.
Goodlettsville                        Jackson


**O P I N I O N**


JUDGMENT OF COURT OF APPEALS
REVERSED; CASE REMANDED TO
TRIAL COURT.                                          REID, Sp. J.

This is a medical malpractice case in which the plaintiff, Barbara White, administratrix of the estate of her deceased husband, Earl R. White, appeals from the Court of Appeals' decision to reverse the trial court's denial of a motion for summary judgment for the defendant, Dr. William H. Lawrence. The issues to be decided are whether the decedent's suicide was a superseding, intervening cause, thereby precluding recovery against the defendant as a matter of law, and whether the decedent's suicide may be considered in determining the fault of the defendant under McIntyre v. Balentine, 833 S.W.2d 52 (Tenn. 1992). The conclusions are that the decedent's act of suicide was not a superseding, intervening cause of death as a matter of law, but a question of fact to be resolved at trial, and the decedent's intentional act of committing suicide may not be considered in assessing fault against the defendant.

I

The decedent, Earl R. White, was 55-years-old at the time of his death. He was addicted to alcohol and suffered from severe depression. In 1990, the decedent began seeing the defendant, Dr. William H. Lawrence, an osteopathic physician with a family practice, for a variety of ailments, including bronchitis, high blood pressure, and back and elbow problems. The defendant was aware throughout his treatment of the decedent that he consumed alcohol to excess. The defendant testified that the decedent was "pretty much" intoxicated whenever he saw him, and that the decedent's "perception, conception, understanding and everything was altered" by alcohol. The defendant

was also aware that the decedent suffered from severe depression. When asked about the nature of the decedent's depression, the defendant stated that the decedent "didn't have any desire to live." The decedent informed the defendant of this fact "two or three different times." The defendant felt that the decedent was a "likely candidate" for suicide. He repeatedly encouraged the decedent to see a psychiatrist, but without success.

After determining in 1990 that the decedent's liver and pancreas had been damaged by his excessive consumption of alcohol, the defendant referred him to another physician for specialized treatment, but the defendant continued to treat the decedent for various ailments until his death on July 14, 1993.

In May or June 1993, the decedent's wife, Barbara White, discussed with the defendant the decedent's excessive consumption of alcohol and the effect it was having on his health. The defendant gave the plaintiff a prescription for Disulfiram, commonly known as "Antabuse," to discourage the decedent from drinking.[1] According to Mrs. White, the defendant instructed her to grind the medication and surreptitiously place it in the decedent's food. She followed the defendant's instructions and secretly administered the medication to

---

[1]Antabuse is a prescription medication which produces a sensitivity to alcohol, such that a person consuming even small quantities of alcohol receives a highly unpleasant reaction. Antabuse plus alcohol, even in small amounts, produces the following reactions: flushing, throbbing in the head and neck, throbbing headache, respiratory difficulty, nausea, copious vomiting, sweating, thirst, chest pain, palpitation dyspnea, hyperventilation, tachycardia, hypotension, syncope, marked uneasiness, weakness, vertigo, blurred vision, and confusion. In severe reactions there may be respiratory depression, cardiovascular collapse, arrhythmias, myocardial infarction, acute congestive heart failure, unconsciousness, convulsions, and death. Physician's Desk Reference 3008 (52d ed. 1998).

the decedent. Soon thereafter, on July 13, 1993, the decedent complained to his wife of a headache and feeling cold. She testified that he did not appear to have been drinking. However, on the following day, July 14, 1993, the decedent went alone to the emergency room at Valley Regional Hospital in Camden, complaining of hot flashes and pain. The emergency room records indicate that the decedent's breath smelled of alcohol. According to an assessment report, the decedent was under "moderate distress," but was fully cooperative and conscious. Since the decedent did not know that he had taken Antabuse, he did not advise the emergency room personnel of that fact. He was diagnosed as suffering from heat exhaustion and discharged. He left walking under his own power. Four hours later, the decedent committed suicide by shooting himself in the head with a pistol.

In response to the plaintiff's allegations that the decedent's death was caused by the defendant's negligence, the defendant asserted in his answer that the decedent's "comparative negligence would bar any recovery." The defendant also filed a motion for summary judgment, asserting that the decedent's act of suicide was the superseding, intervening cause of death barring recovery as a matter of law.

In response to the motion, the plaintiff filed the affidavit of Dr. J. Kirby Pate, a psychiatrist, in which Dr. Pate opined that the defendant's "covert administration of [Antabuse] to an actively drinking person, alcoholic or otherwise, is entirely

inappropriate, violates the standard of care, and is dangerous to the point of recklessness." Dr. Pate also stated that the use of Antabuse required the informed consent of the patient, and further, that "[i]t was reasonably foreseeable for Dr. Lawrence to realize that secretly prescribing Antabuse to an alcoholic and depressed patient under his care and control would cause severe physical symptoms, which is a major risk factor for suicide." Dr. Pate concluded that "[t]he covert prescription and inappropriate instructions for the use of [Antabuse] by Dr. Lawrence in the treatment of Mr. White probably caused [his] suicide death, since Mr. White was suffering from chronic alcoholism and depression. . . ."

The plaintiffs also submitted the affidavit of Dr. Murray W. Smith, who was the medical director of the Baptist Hospital Drug and Alcohol Recovery Center in Nashville. Dr. Smith, like Dr. Pate, stated that the defendant should have reasonably foreseen that secretly prescribing and administering Antabuse to an alcoholic and depressed patient would cause severe physical problems and lead to the suicide of the patient. Dr. Smith opined that "the inappropriate prescription and instructions for the use of Antabuse by Dr. Lawrence in the treatment of Mr. White caused the suicide death from depression, occurring as a side effect of the Antabuse." Dr. Smith further testified that Dr. Lawrence owed a duty of care to the decedent not to administer Antabuse without the patient's full knowledge, to warn the decedent of the Antabuse-alcohol reaction, caution him against drinking while taking the drug, and make him fully aware of possible consequences, including the fact that

reactions may occur with alcohol up to 14 days after ingesting Antabuse. The defendant did not file any affidavits of experts in response to the affidavits of Drs. Pate and Smith submitted by the plaintiff.

The trial court denied the defendant's motion for summary judgment. The court found there were disputed issues of material fact regarding whether the decedent's act of suicide constituted a superseding, intervening cause of death. The defendant then filed a motion for an interlocutory appeal, which the trial court granted with the following explanation:

> The court is led to exercise its discretion in favor of permitting an interlocutory appeal because the court has distinguished this case from the long line of Tennessee cases . . . holding that suicide by a person who understands the nature of his or her act is an independent, intervening, proximate cause in a non-custodial setting as a matter of law.
>
> It is the opinion of this court that this case represents a case of first impression in Tennessee because this case involves allegations that the defendant doctor surreptitiously prescribed a drug for the plaintiff's decedent which, because of its effects on him, caused him to commit suicide.

The Court of Appeals reversed and granted summary judgment to the defendant.

**II**

Summary judgment is appropriate only if the moving party is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.03; Byrd v. Hall, 847 S.W.2d 208, 210 (Tenn. 1993). The party moving for summary judgment has the burden of demonstrating that no genuine issue of material fact exists, id. at 210, and this Court must review the record without a presumption of correctness supporting the trial court's judgment. Robinson v. Omer, 952 S.W.2d 423, 426 (Tenn. 1997); Bain v. Wells, 936 S.W.2d 618, 622 (Tenn. 1997). The Court must view the evidence in the light most favorable to the nonmoving party, draw all reasonable inferences in her favor, and discard all countervailing evidence. Byrd, 847 S.W.2d at 210-11. Only if the facts and conclusions to be drawn from the facts permit a reasonable person to reach only one conclusion should summary judgment be granted. Robinson, 952 S.W.2d at 426; Bain, 936 S.W.2d at 622; McClung v. Delta Square Ltd. Partnership, 937 S.W.2d 891, 894 (Tenn. 1996).

**III**

The first issue to be considered is whether the act of suicide by the decedent forecloses recovery against the defendant as a matter of law. The defendant is not precluded from raising the decedent's intentional act of suicide to defeat one or more of the elements of the plaintiff's negligence cause of action. See Turner v. Jordan, 957 S.W.2d 815, 823 (Tenn. 1997) ("[A] negligent defendant may, of course, raise a third party's intentional act to refute elements of the plaintiff's claim such as duty and causation. . .

.”).  Thus is presented the first issue in this case, which is whether the decedent's act of suicide constitutes an intervening cause, breaking the chain of proximate, or legal, causation.

A claim of negligence requires proof of each of the following elements:  a duty of care owed by the defendant to the plaintiff; conduct falling below the applicable standard of care that amounts to a breach of that duty; an injury or loss; cause in fact; and proximate cause.  <u>McClung v. Delta Square Ltd. Partnership</u>, 937 S.W.2d 891, 894 (Tenn. 1996); <u>McCall v. Wilder</u>, 913 S.W.2d 150, 153 (Tenn. 1995).  The focus in this case is on the last element -- proximate causation.  The Court recently discussed the nature of proximate causation by contrasting it with causation in fact:

> The distinction between cause in fact and proximate, or legal, cause is not merely an exercise in semantics.  The terms are not interchangeable.  Although both cause in fact and proximate, or legal, cause are elements of negligence that the plaintiff must prove, they are very different concepts.  Cause in fact refers to the cause and effect relationship between the defendant's tortious conduct and the plaintiff's injury or loss.  Thus, cause in fact deals with the "but for" consequences of an act.  The defendant's conduct is a cause of the event if the event would not have occurred but for the conduct. In contrast, proximate cause, or legal cause, concerns a determination of whether legal liability should be imposed where cause in fact has been established. Proximate or legal cause is a policy decision made by the legislature or the courts to deny liability for otherwise actionable conduct based on considerations of logic, common sense, policy, precedent and 'our more or less inadequately expressed ideas of what justice demands or of what is administratively possible and convenient.'  (Citations omitted).

Snyder v. LTG Lufttechnische GMbH, 955 S.W.2d 252, 256 n. 6 (Tenn. 1997). See also Kilpatrick v. Bryant, 868 S.W.2d 594, 598 (Tenn. 1993).

As pointed out by the defendant, an independent intervening cause breaks the chain of proximate causation and thereby precludes recovery. The law is equally clear, however, that "[a]n intervening act, which is a normal response created by negligence, is not a superseding, intervening cause so as to relieve the original wrongdoer of liability, provided the intervening act could have reasonably been foreseen and the conduct [of the original wrongdoer] was a substantial factor in bringing about the harm." McClenahan v. Cooley, 806 S.W.2d 767, 775 (Tenn. 1991); see also McClung, 937 S.W.2d at 905; Haynes v. Hamilton County, 883 S.W.2d 606, 612 (Tenn. 1994). Accordingly, "an intervening act will not exculpate the original wrongdoer unless it is shown that the intervening act could not have been reasonably anticipated." McClenahan, 806 S.W.2d at 775. Whether such an act or event constitutes an intervening cause is for the jury to determine unless the uncontroverted facts and inferences to be drawn from the facts make it so clear that all reasonable persons must agree on the proper outcome. McClung, 937 S.W.2d at 905.

This Court and the Court of Appeals have held that suicide may constitute an intervening cause if it is a willful, calculated, and deliberate act of one who has the power of choice. See, e.g., Lancaster v. Montesi, 390 S.W.2d 217, 221-22 (Tenn. 1965); Jones v.

<u>Stewart</u>, 191 S.W.2d 439, 440 (Tenn. 1946); <u>Weathers v. Pilkinton</u>, 754 S.W.2d 75, 78-79 (Tenn. App. 1988); <u>Eckerd's, Inc. v. McGhee</u>, 86 S.W.2d 570, 575 (Tenn. App. 1935). However, the act of suicide is not always viewed as an intervening act that relieves the negligent actor from liability. <u>See, e.g.</u>, <u>Cockrum v. State</u>, 843 S.W.2d 433, 436-37 (Tenn. App. 1992)( "In the custodial context, when the intervening act [of suicide] is itself the foreseeable harm that gives rise to the custodian's duty, the custodian . . . will not be relieved of liability simply because the act has occurred.").

As the expert testimony in this case demonstrates, the foreseeability or likelihood of a suicide does not necessarily depend upon the mental capacity of the deceased at the time the suicide was committed. The fact that the deceased was not insane or bereft of reason does not necessarily lead to the conclusion that the suicide, which is the purported intervening cause, is unforeseeable. As our cases dealing with proximate or legal causation have indicated, the crucial inquiry is whether the defendant's negligent conduct led to or made it reasonably foreseeable that the deceased would commit suicide. If so, the suicide is not an independent intervening cause breaking the chain of legal causation. Those decisions holding to the contrary are overruled. <u>See</u> <u>Champagne v. U.S.</u>, 513 N.W.2d 75, 81 (N.D. 1994) ("[W]hen a patient's suicide is a foreseeable consequence of the medical provider's negligent care, the act of suicide cannot be deemed a superseding intervening cause."); <u>see</u> <u>also</u> <u>Jacoves v. United Merchandising Corp.</u>, 11 Cal. Rptr. 2d 468, 482-83 (Cal. App.

1992); <u>Summit Bank v. Panos</u>, 570 N.E.2d 960, 968-69 (Ind. App. 1991); <u>Cowan v. Doering</u>, 545 A.2d 159, 166-67 (N.J. 1988).

The record in this case shows that reasonable minds could conclude that the decedent's act of suicide was a foreseeable consequence of the defendant's negligence in surreptitiously prescribing and administering the Antabuse. The record shows that leading risk factors for suicide include physical illness and depression. The decedent suffered from both. The plaintiff presented medical proof that the decedent's suicide was reasonably foreseeable from a medical standpoint, and that the defendant's conduct was a substantial factor in bringing about the suicide. Both Dr. Pate and Dr. Smith testified that the defendant should have reasonably foreseen that secretly prescribing Antabuse to an alcoholic and depressed patient would cause severe physical problems and could cause the decedent to choose to end his life. The jury could thus find that the suicide was the foreseeable result of the defendant's negligence.

**IV**

The second issue to be considered is whether the decedent's intentional act of committing suicide may be considered in determining the fault of the defendant. The precise question is whether the negligence of the defendant can be compared with the intentional conduct of the decedent in taking his own life in

assessing fault.[2]  The resolution of this issue has been largely determined by the decision in Turner v. Jordan, 957 S.W.2d 815 (Tenn. 1997).  The Court granted review in Turner to decide an issue of first impression, "whether the defendant psychiatrist's negligence should have been compared with the intentional act of the non-party patient in determining the extent of the defendant's liability to the plaintiffs."  Id. at 821.  Turner involved a psychiatric patient who attacked and severely beat the plaintiff, a nurse who worked at the hospital where the patient was being treated.  The patient's psychiatrist knew that he was "aggressive, grandiose, intimidating, combative, and dangerous" prior to the attack on the nurse.  Id. at 817.  Nonetheless, the psychiatrist did nothing to keep the patient from posing a threat to others in the facility, such as medicating, restraining, or secluding him.  The nurse sued the psychiatrist for negligence, alleging that he had violated his duty to use reasonable care in the treatment of his patient, which, in turn, created a foreseeable and unreasonable risk of harm to her.  The psychiatrist argued that comparison was proper because it would limit or link his liability to his percentage of fault, one of the goals of comparative fault.  See McIntyre, 833 S.W.2d at 58.  In contrast, the plaintiff argued that the psychiatrist's liability ought not be reduced by the occurrence of a foreseeable act that he had a duty to prevent.  The Court held:

> In our view, the conduct of a negligent
> defendant should not be compared with the

_____

[2]The Court of Appeals found that "there is overwhelming evidence in the record from which the jury could find that the defendant was negligent in secretly prescribing Antabuse to [the] decedent."

intentional conduct of another in determining comparative fault where the intentional conduct is the foreseeable risk created by the negligent tortfeasor.  As other courts have recognized, comparison presents practical difficulties in allocating fault between negligent and intentional acts, because negligent and intentional torts are different in degree, in kind, and in society's view of the relative culpability of each act.  Such comparison also reduces the negligent person's incentive to comply with the applicable duty of care.  Moreover, while a negligent defendant may, of course, raise a third party's intentional act to refute elements of the plaintiff's negligence claim such as duty and causation, fairness dictates that it should not be permitted to rely upon the foreseeable harm it had a duty to prevent so as to reduce its liability.

Turner, 957 S.W.2d at 823.

Other jurisdictions have reached the same conclusion under similar facts.  In McNamara v. Honeyman, 546 N.E.2d 139, 146-47 (Mass. 1989), the court stated,

We join a number of courts in holding there can be no comparative negligence where the defendant's duty of care includes preventing the self-abusive or self-destructive acts that caused the plaintiff's injury.  (Citation omitted.) Clearly, the duty of care that the defendants owed to an institutionalized patient such as [the plaintiff] included taking reasonable steps to prevent her suicide when it was a known or foreseeable risk.  To allow the defense of comparative negligence in these circumstances would render meaningless the duty of the hospital to act reasonably in protecting the patient against self-harm.

-13-

And in Tomfohr v. Mayo Foundation, 450 N.W.2d 121, 125 (Minn. 1990), where a patient committed suicide in his room at a psychiatric hospital, the court stated,

> When the jury has been asked, as it was here, to determine whether the suicide attempt was reasonably foreseeable, given the circumstances surrounding the patient's admission and his mental state, it is not only unnecessary but also duplicative to again review the patient's conduct to determine whether the patient's volitional act requires the application of comparative fault. In this specific type of case, the mental condition of the patient exists prior to the hospital's negligent act, and it is that condition which gives rise to the hospital's duty of care and which defines the scope of that duty.

The same principles that were found to preclude comparison of fault in Turner apply with equal force to the instant case. The defendant's liability may not be reduced by comparing his negligent conduct with the decedent's intentional act of committing suicide since the intentional act was a foreseeable risk created by the defendant's negligence.[3]

V

---

[3]Judge Drowota's dissent would hold that where the intentional wrongdoing of a patient is the foreseeable risk created by the negligent physician, comparison of fault is appropriate if the patient is a party to the suit. The rationale for the Turner decision, that "fairness dictates that [a negligent defendant] should not be permitted to rely upon the foreseeable harm it had a duty to prevent so as to reduce its liability" is sound, and the holding of Turner is applicable whether the patient is or is not a party.

In summary, on the record before the Court, reasonable minds can differ on whether the decedent's act of suicide was an independent intervening cause of the decedent's death, and the decedent's intentional act of committing suicide may not be considered in assessing the defendant's fault.

The judgment of the Court of Appeals is reversed, and the case is remanded to the trial court for further proceedings.

Costs of the appeal are taxed to the defendant Lawrence.

_____
Lyle Reid, Sp. J.

Concur:

Anderson, C.J., and Birch, J.

Drowota, J. - Concurring/Dissenting Opinion
Holder, J. - Concurring and Dissenting Opinion

IN THE SUPREME COURT OF TENNESSEE

AT JACKSON

FILED

**August 31, 1998**

Cecil Crowson, Jr.
**Appellate Court Clerk**

BARBARA WHITE, as the      )FOR PUBLICATION
Administratrix of the Estate of   )
Earl R. White, deceased,     )
                   )
                   )
     Plaintiff/Appellant,      )
                   )
                   )CARROLL CIRCUIT
                   )
     v.               )
                   )Hon. Julian P. Guinn
                   )
WILLIAM H. LAWRENCE, M.D.,      )
                   )No. 02S01-9701-CV-00007
     Defendant/Appellee.       )


**CONCURRING/DISSENTING OPINION**


I agree with the majority that on the record before us reasonable minds could conclude that the decedent's intentional act of committing suicide was a foreseeable consequence of the defendant's negligence in surreptitiously prescribing and administering Antabuse to the decedent. Thus, it would be inappropriate for this Court to find that the decedent's intentional act of committing suicide was a superseding, intervening cause sufficient to preclude liability as a matter of law. It was, after all, the defendant's negligence that arguably set in motion the chain of events that led the decedent to take his own life in view of his condition.

-16-

I disagree, however, with the majority's conclusion that the decedent's intentional act of committing suicide may not be considered in determining relative degrees of fault. The majority's holding that the negligence of the defendant may not be compared with the intentional conduct of the decedent in taking his own life in assessing fault is inconsistent with the fundamental principle of comparative fault of linking liability with fault. Therefore, I respectfully dissent from the majority's decision.

In McIntyre v. Balentine, 833 S.W.2d 52 (Tenn. 1992), this Court adopted a system of comparative fault because it "closely link[ed] liability and fault." Id. at 58. We felt that linking liability with fault best achieved the concepts of fairness and efficiency, the basis of comparative fault. See Owens v. Truckstops of America, 915 S.W.2d 420, 424 (Tenn. 1996). Thus, we have rejected the notion that liability should be imposed to a degree disproportionate to fault. McIntyre, 833 S.W.2d at 58. This theme has been reiterated by the Court on multiple occasions and in a variety of circumstances. See, e.g., Whitehead v. Toyota Motor Corp., 897 S.W.2d 684, 693 (Tenn. 1995) ("In keeping with the principle of linking liability with fault, a plaintiff's ability to recover in a strict products liability case should not be unaffected by the extent to which his injuries result from his own fault."); Volz v. Ledes, 895 S.W.2d 677, 680 (Tenn. 1995) ("We believe that a system wherein a particular defendant is liable only for the percentage of the plaintiff's damages that are caused by that defendant's fault is the system that best achieves our

stated goal in <u>McIntyre v. Balentine</u> of linking liability and fault."). See also <u>Owens</u>, 915 S.W.2d at 428 ("[H]aving thus adopted a rule more closely linking liability and fault, it would be inconsistent to simultaneously retain a rule, joint and several liability, which may fortuitously impose a degree of liability that is out of all proportion to fault."). In short, it is clear that since the inception of comparative fault in this State, the guiding principle has been to link liability with fault, unless special circumstances compelled us to take a different approach. See, e.g., <u>Snyder v. LTG Lufttechnische GmbH</u>, 955 S.W.2d 252 (Tenn. 1997)(holding that fault may not be assessed against an immune employer in an employee's tort action against a third party).

In this case, the majority relies upon <u>Turner v. Jordan</u>, 957 S.W.2d 815 (Tenn. 1997), in holding that the negligence of the defendant may not be compared with the intentional conduct of the decedent in taking his own life in determining relative degrees of fault.[4] <u>Turner</u> involved a psychiatric patient who attacked and severely beat the plaintiff, a nurse who worked at the hospital where the patient was being treated. The patient's psychiatrist knew that he was "aggressive, grandiose, intimidating, combative, and dangerous" prior to the attack on the nurse. <u>Id</u>. at 817. Nonetheless, the psychiatrist did nothing to keep the patient from posing a threat to others in the facility, such as medicating,

---

[4]Of course, the practical impact of the majority's holding is to preclude the defendant from reducing his liability to the plaintiff by pointing the finger of fault, however slightly, at the decedent.

-18-

restraining, or secluding him. The nurse subsequently sued the psychiatrist for medical malpractice, alleging that he had violated his duty to use reasonable care in the treatment of his patient which, in turn, created a foreseeable and unreasonable risk of harm to her.

The trial court in Turner instructed the jury on the law of comparative fault and indicated that the jury could allocate the fault, if any, between the negligence of the psychiatrist and the intentional misconduct of the patient, who was not a party to the suit. This Court subsequently granted review in Turner to decide "whether the defendant psychiatrist's negligence should have been compared with the intentional act of the non-party patient in determining the extent of the defendant's liability to the plaintiffs." Id. at 821. We held that the conduct of the negligent tortfeasor, the psychiatrist, could not be compared with the intentional misconduct of the patient, a non-party, in apportioning fault because the intentional wrongdoing was a foreseeable risk created by the negligent tortfeasor. Id. at 823.

Turner and the instant case are dissimilar in that Turner, unlike the present case, involved comparing the negligent act of a party with the intentional misconduct of a non-party. The case at bar, on the other hand, involves comparing fault between a negligent party and, for all practical purposes, another party -- the decedent -- who acted

intentionally by taking his own life.[5]  Although I reluctantly agreed with the Court's resolution of <u>Turner</u>, I cannot do so in the present case because the majority has now reached a point in the development of our comparative fault law where fault may not even be assessed against **a party to the litigation**.  The majority's approach represents too great a departure from the guiding principle of linking liability with fault for me to accept.

Accordingly, in keeping with the goal of comparative fault of linking liability with fault by holding a particular defendant liable only for the percentage of the plaintiff's damages caused by that defendant's fault, I would limit the rule in <u>Turner</u> to the intentional misconduct of non-parties.  Because the majority is unwilling to do this, and because I am of the opinion that the trier of fact should have the opportunity to assess fault against the decedent to the extent that he shares some of the fault in bringing about the damages for which he (his estate) now seeks to recover, I dissent from the majority's decision.

_____

[5]In an action for wrongful death, the right that survives to the surviving spouse, the widow in the instant case, is the same cause of action the decedent would have had had he survived.  <u>See</u> Tenn. Code Ann. § 20-5-106 ("The right of action which a person, who dies from injuries received from another . . . would have had against the wrongdoer, in case death had not ensued, shall not abate or be extinguished by the person's death but shall pass to the person's surviving spouse. . . ."); <u>see</u> <u>also</u> <u>Weathers v. Pilkinton</u>, 754 S.W.2d 75, 78 (Tenn. App. 1988).

Frank F. Drowota, III

Justice

-21-

FILED

August 31, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

BARBARA WHITE, as the          )
Administratrix of the estate of    )
Earl R. White, Deceased,         )
                                 )
    Plaintiff/Appellant,          )          CARROLL CIRCUIT
                                 )
v.                               )          Hon. Julian P. Guinn
                                 )
WILLIAM H. LAWRENCE, M.D.,        )          No. 02S01-9701-CV-00007
                                 )
    Defendant/Appellee.           )


## CONCURRING AND DISSENTING OPINION


The sole issue briefed and argued in this case was whether the decedent's act of suicide is as a matter of law an intervening, superseding cause of the defendant's negligence. The majority has held it is not, a conclusion in which I concur.

The majority has gone farther, however, to decide whether the act of suicide can be "compared" with the defendant's negligence. I do not agree that this case presents an issue of comparative fault requiring us to decide whether the decedent's intentional act of taking his own life should be compared with the negligence of the defendant. First, this determination is premature. The defendant's answer does not raise the issue of the comparative fault of the decedent although the answer does plead the fault of the administratrix of the estate with respect to her own actions. This Court has held in George v. Alexander, 931 S.W.2d 517, 520-21(Tenn. 1996), that a party may not attempt, under the guise of determining "proximate cause," to shift fault to another person unless comparative

fault is pled pursuant to Rule 8.03. Because the issue was not before the Court of Appeals and is not squarely before us, we have not had the benefit of the briefs of the parties on the issue of comparative fault under the facts of this case.

Although I would prefer to rely on the procedural posture of this case, I believe that the statements of the majority on the issue of comparative fault fail to provide guidance to the trial courts and attorneys of this state. The majority has held that suicide is not, as a matter of law, an intervening, superseding cause so as to bar the suit on behalf of Mr. White's estate. I fully concur with this conclusion. To the extent that the majority is also holding that the act of suicide should not be used as a back-door maneuver to bar the claim, I would also agree. The defendant should not be permitted to allege that the decedent was fifty percent or more "at fault" solely because of his act of suicide.

I am unclear if the majority is holding that other facts and circumstances occurring prior to the suicide cannot be used to determine causation. To the extent that the majority does so hold, I dissent. In my opinion, the defendant should not be precluded from attempting to prove that Mr. White's successful attempt to end his life was either not caused by the surreptitious administration of Antabuse or was caused by other factors. I do not read the majority opinion to preclude an allegation, in an appropriate case, of negligence on the part of the decedent/patient. A patient's negligent acts or omissions have always been available as a defense. To read the majority opinion otherwise would be to alter the law of medical negligence in ways that I do not believe the majority intends.

_____
JANICE M. HOLDER, JUSTICE