# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### March 24, 2017 Session

## BRENDA RAMSEY v. COCKE COUNTY, TENNESSEE, ET AL.

**Appeal from the Circuit Court for Cocke County**
**No. 33414-II      Richard R. Vance, Judge**

_____

### No. E2016-02145-COA-R3-CV

_____

In this wrongful death action, the decedent's mother filed suit alleging that the county emergency communications district and the city police department refused to send help when the plaintiff called to report that her daughter was making suicidal threats and that, as a result, her daughter committed suicide later the same night. The trial court granted summary judgment in favor of the defendants on the ground that the decedent's suicide constituted an intervening, superseding cause. Viewing the evidence in the light most favorable to the plaintiff, we conclude that the decedent's suicide was foreseeable and that the special duty exception to the public duty doctrine applies. We, therefore, reverse the trial court's grant of summary judgment and remand for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed and Remanded**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which D. MICHAEL SWINEY, C.J., and THOMAS R. FRIERSON, II, J., joined.

Justin G. Day, Knoxville, Tennessee, for the appellant, Brenda Ramsey.

Russell W. Adkins, Kingsport, Tennessee, for the appellee, Cocke County Emergency Communications District.

Daniel R. Pilkington, Knoxville, Tennessee, for the appellee, City of Newport, Tennessee.

# OPINION

## FACTUAL AND PROCEDURAL BACKGROUND

Brenda Ramsey filed this wrongful death action in April 2014, individually and as the personal representative of Rebecca Ramsey, her daughter, against Cocke County,[1] Cocke County Emergency Communications District ("the ECD" or "the District"), and the City of Newport/Newport Police Department ("the City" or "the Department"). She alleged causes of action for negligence/wrongful death and negligent infliction of emotional distress. Rebecca was born on January 18, 1992 and committed suicide on April 7, 2013.

Brenda Ramsey's complaint includes the following allegations concerning the events prior to Rebecca's death:

> 10. By the evening hours of April 7, 2013, Brenda Ramsey became increasingly concerned about the unexplained serious mental and behavioral status of her daughter. Rebecca's mental and behavioral status continued to decline to the point that by approximately 8:30 p.m., she began to indicate that she intended to take her own life.
>
> 11. After Brenda Ramsey heard her daughter's suicide threats at approximately 8:30 p.m. on April 7, 2013, she dialed 9-1-1, and was connected to a dispatcher (identity unknown) employed by Defendants Cocke County and the District. Brenda Ramsey told the dispatcher that she was in fear of her daughter's life due to her suicide threats and her erratic and unexplained behavior. She also told the dispatcher that she needed the assistance of an officer to help her immediately restrain her daughter or otherwise take the precautions necessary to prevent her daughter from harming herself.
>
> 12. The Cocke County 9-1-1 District dispatcher refused to contact the local police or other uniformed officer or responder and specially indicated that it "was not their policy to respond to domestic family issues."
>
> 13. At or around 9:15 p.m. on April 7, 2013, as the concerns for her daughter continued to escalate, Brenda Ramsey placed a second call to the District 9-1-1. The dispatcher was [again informed] about Rebecca Ramsey's altered behavioral state and her threats to take her own life. The dispatcher was also informed that Rebecca was damaging property inside the house in a violent rage. Again, the dispatcher explained that it was not their policy to send responders in situations like this. After Brenda Ramsey continued to insist that an officer be sent out, the dispatcher indicated that

---

[1] Cocke County filed a motion for summary judgment, which was granted by agreed order; the County is not involved in this appeal.

she would get an officer on the line to confirm that this was "their policy." An officer (who identified himself as Officer Woody), an employee of the Defendant City of Newport/Newport Police Department, came on the line and responded only by confirming what the dispatcher had told him about the policy which did not require a response to issues that the dispatcher classified as "domestic" in nature. The City of Newport Police Department was approximately one mile from Brenda Ramsey's home.

14. After dialing 9-1-1 and after the Defendants refused to send out an officer for the second time, Brenda Ramsey drove to the Newport Police Department to plead for some assistance in person. Unfortunately, the doors to the police office were locked and there was no officer to be found, so she returned home.

When Brenda Ramsey returned home, Rebecca had killed herself.

The ECD and the City disagree with Brenda Ramsey's description of her communications with them. In its answer, the City denied that Brenda Ramsey "notified any employee of the City of Newport that her daughter had threatened suicide or threatened to harm herself [or] anyone else." Similarly, in response to the plaintiff's request for admissions, the City denied that "Brenda Ramsey requested that an officer come to her home because her daughter Rebecca Ramsey had threatened suicide." The Department also denied that one of its employees "refused to send an officer or first responder to the home of Brenda Ramsey" on April 7, 2013. In its answer, the ECD stated that Brenda Ramsey "did not inform Cocke County E-911 of suicidal threats, altered behavior, property damage or violence." The ECD further stated that the District "offered to send an officer to the home, but Plaintiff asked that a police officer instead call her." The District further alleged that it promptly connected Brenda Ramsey to the police department.

In September 2015, after the parties had engaged in discovery, the ECD filed a motion for summary judgment arguing that the District did not owe the plaintiff a duty of care pursuant to the public duty doctrine and that the District "did not legally cause" any of the plaintiff's injuries. In support of its motion, the District submitted a statement of undisputed material facts and excerpts from the depositions of Brenda Ramsey and Lorran Michelle Lane, an ECD dispatcher who spoke with Ms. Ramsey on the evening of April 7, 2013. In July 2016, the Department filed a motion for summary judgment on the grounds that the City of Newport "did not owe any duty to the decedent to prevent her from voluntarily taking her own life" and that the decedent's suicide "is an intervening and independent cause which supersedes any liability and is the proximate cause of the death of the decedent." To support its motion, the Department filed a statement of undisputed material facts and excerpts from the depositions of Brenda Ramsey, Ms. Lane, and Matthew Elliott, an officer with the Department.

- 3 -

Ms. Ramsey responded to the statements of undisputed material facts filed by the Department and the District. She disputed many of the factual statements and continued to assert the facts set forth in her complaint, with affidavit excerpts in support of her contentions. Ms. Ramsey agreed that "[n]either Ms. Lane nor Officer Elliott assured Ms. Ramsey that any assistance would be sent." Both defendants agreed that the factual statements in Ms. Ramsey's statement of genuine issues of material facts in dispute were disputed, but they characterized the facts as being "immaterial" to the motion for summary judgment.

In response to the defendants' motions for summary judgment, Ms. Ramsey submitted an affidavit by Ken Katsaris, a law enforcement officer and consultant, who opined that the ECD had a "duty to dispatch a police officer to the home of Brenda Ramsey if such a request was made" and that "[t]he police officers employed by the City of Newport also had a duty to come to the home of Ms. Ramsey if such a request was made." Mr. Katsaris further opined that the defendants' failure to respond to Ms. Ramsey's requests for help amounted to reckless misconduct. Ms. Ramsey also submitted portions of her own deposition and of the depositions of Ms. Lane and Mr. Elliott in opposition to the defendants' motions.

The trial court held a hearing on the defendants' motions for summary judgment on August 29, 2016, and it made the following pertinent findings from the bench, which were incorporated into the final order entered on October 7, 2016:

> It is disputed as to what was said between the 911 operator and Ms. Ramsey. It's disputed as to what was said between the officer and Ms. Ramsey.
> It is undisputed that no one from the Newport Police Department or 911 had any direct contact or communication of any kind with Rebecca Ramsey, the young lady. It is undisputed that she was not in any form of their custody.
> It is undisputed that, having had no contact with her, they had no special relationship with her; that it is undisputed that nothing they did caused Ms. Ramsey to take her life, because they had no interaction of any sort with her.
> So we must look at the caselaw. The caselaw is clear. Our Supreme Court and Court of Appeals on multiple occasions have held that suicide is an act, potential act, that is an intervening cause in many situations that negates any previous negligence.
> In this case, because of the suicide as an intervening cause, the exceptions must be met. They've not been met in this case. And this is why, from Plaintiff's viewpoint, the disputed facts from their version of the facts of what the 911 operator or police department did are beyond unfortunate. If what she says is true, they were wrong.

But even if they were, again, the clear weight of authority, the only authority, is that unless one of these exceptions exists, that suicide is an independent act, an intervening cause which negates any previous conduct on behalf of the Defendants.

With respect to the difference between the arguments on recklessness and negligence, that is not material to these arguments. In fact, I would probably hold, if I had to, that an allegation of recklessness does constitute gross negligence, but the Court doesn't have to address that.

It's unfortunate. This Court always prefers to see disputes and litigation resolved by [a] finder of fact on its merits, but in this case the law is clear. And even the disputed facts, but certainly absolutely the undisputed facts, when considered in the light most favorable to the plaintiff, clearly show that there's no liability on the part of either 911 or Newport Police Department.

They did not cause this young lady to take her own life. And that's the conclusion based upon the clear holdings of our Supreme Court . . . .

Thus, the trial court granted summary judgment in favor of the City and the District. Ms. Ramsey appeals.

On appeal, Ms. Ramsey asserts that Rebecca's suicide was not a superseding cause, that the trial court erred in granting summary judgment on the issue of causation, and that the public duty doctrine does not apply.

STANDARD OF REVIEW

A party filing a motion for summary judgment should prevail "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." TENN. R. CIV. P. 56.04. If the moving party does not bear the burden of proof at trial, it is entitled to summary judgment if it "(1) [s]ubmits affirmative evidence that negates an essential element of the nonmoving party's claim; or (2) [d]emonstrates to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." Tenn. Code Ann. § 20-16-101. In reviewing a trial court's decision on a motion for summary judgment, we consider the evidence in the light most favorable to the nonmoving party and make all reasonable inferences in that party's favor. *Godfrey v. Ruiz*, 90 S.W.3d 692, 695 (Tenn. 2002). Our review of the trial court's judgment on a motion for summary judgment is de novo with no presumption of correctness. *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015).

ANALYSIS

Proximate Cause

Brenda Ramsey argues that the trial court erred in granting summary judgment in favor of the defendants on the ground that Rebecca's suicide was an intervening, superseding cause.

To prove a claim for negligence, a plaintiff must demonstrate: "1) a duty of care owed by the defendant to the plaintiff; 2) conduct falling below the applicable standard of care that amounts to a breach of that duty; 3) injury or loss; 4) cause in fact; and 5) proximate, or legal, cause."[2] *Howell ex rel. Williams v. Turner*, No. M2008-01588-COA-R3-CV, 2009 WL 1422982, at *3 (Tenn. Ct. App. May 21, 2009) (citing *McClung v. Delta Square Ltd.*, 937 S.W.2d 891, 894 (Tenn. 1996)). Legal or proximate cause requires proof of three factors: "(1) the tortfeasor's conduct must have been a substantial factor in bringing about the harm being complained of[;] (2) there is no rule or policy that should relieve the wrongdoer from liability because of the manner in which the negligence has resulted in the harm; and (3) the harm giving rise to the action could have reasonably been foreseen or anticipated by a person of ordinary intelligence and prudence." *Id.* (citing *McClenahan v. Cooley*, 806 S.W.2d 767, 775 (Tenn. 1991)).

The defendants argue that Rebecca's suicide was an independent intervening cause negating the element of proximate cause. The doctrine of independent intervening cause relieves a negligent actor from liability "when a new, independent and unforeseen cause intervenes to produce a result that the negligent actor could not have reasonably foreseen." *Rains v. Bend of the River*, 124 S.W.3d 580, 593 (Tenn. Ct. App. 2003) (citing *White v. Lawrence*, 975 S.W.2d 525, 529 (Tenn. 1998)). In *Rains*, the court made the following statements regarding the doctrine of independent intervening cause:

> [The doctrine] is premised on the concept that the independent intervening cause breaks the chain of legal causation between the original negligent actor's conduct and the eventual injury. The doctrine applies only when the intervening act (1) was sufficient by itself to cause the injury, (2) was not reasonably foreseeable to the negligent actor, and (3) was not a normal response to the negligent actor's conduct.
>
> Foreseeability is the key here because no person is expected to protect against harms from events that he or she cannot reasonably

---

[2] The term "proximate cause" is sometimes used to mean a combination of cause in fact and legal cause. *See Lindsey v. Miami Dev. Corp.*, 689 S.W.2d 856, 861 (Tenn. 1985). "Legal cause" is synonymous with "proximate cause" when the latter term is used to refer to a separate element from cause in fact. *See Rains v. Bend of the River*, 124 S.W.3d 580, 592 (Tenn. Ct. App. 2003).

anticipate or foresee or which are so unlikely to occur that the risk, although recognizable, would commonly be disregarded. As a general matter, an actor has much less reason to anticipate intentional misconduct than negligence.

*Id.* (citations omitted).

Our Supreme Court addressed the issue of suicide as an independent intervening cause in *White v. Lawrence*, 975 S.W.2d at 525, a medical malpractice action brought against a physician, Dr. Lawrence, who covertly prescribed Antabuse[3] to Mr. White, whom he knew to be suffering from alcohol addiction and severe depression. *White*, 975 S.W.2d at 527. The trial court denied the defendant's motion for summary judgment, and the Court of Appeals reversed. *Id.* at 528. The Supreme Court gave the following summary of the applicable legal principles:

This Court and the Court of Appeals have held that suicide may constitute an intervening cause if it is a willful, calculated, and deliberate act of one who has the power of choice. *See, e.g., Lancaster v. Montesi*, 216 Tenn. 50, 390 S.W.2d 217, 221-22 (1965); *Jones v. Stewart*, 183 Tenn. 176, 191 S.W.2d 439, 440 (1946); *Weathers v. Pilkinton*, 754 S.W.2d 75, 78-79 (Tenn. App. 1988); *Eckerd's, Inc. v. McGhee*, 19 Tenn. App. 277, 86 S.W.2d 570, 575 (1935). However, the act of suicide is not always viewed as an intervening act that relieves the negligent actor from liability. *See, e.g., Cockrum v. State*, 843 S.W.2d 433, 436-37 (Tenn. App. 1992) ("In the custodial context, when the intervening act [of suicide] is itself the foreseeable harm that gives rise to the custodian's duty, the custodian . . . will not be relieved of liability simply because the act has occurred.").

. . . The fact that the deceased was not insane or bereft of reason does not necessarily lead to the conclusion that the suicide, which is the purported intervening cause, is unforeseeable. As our cases dealing with proximate or legal causation have indicated, the crucial inquiry is whether the defendant's negligent conduct led to or made it reasonably foreseeable that the deceased would commit suicide. If so, the suicide is not an independent intervening cause breaking the chain of legal causation. Those decisions holding to the contrary are overruled.

*Id.* at 530. In support of the final proposition quoted above (regarding situations in which suicide is not an independent intervening cause), the Court cited cases from other states

---

[3] Antabuse is a medication which "produces a sensitivity to alcohol, such that a person consuming even small quantities of alcohol receives a highly unpleasant reaction." *White*, 975 S.W.2d at 527 n.1.

involving medical providers whose patients committed suicide. *Id.*[4] The Court held that "reasonable minds could conclude that the decedent's act of suicide was a foreseeable consequence of the defendant's negligence in surreptitiously prescribing and administering the Antabuse." *Id.*

In addition to *White v. Lawrence*, a key case cited by all of the parties on the issue of independent intervening cause is *Rains v. Bend of the River*, 124 S.W.3d at 580. In *Rains*, the parents of an eighteen-year-old who committed suicide filed a wrongful death action against the retailer who sold their son ammunition in violation of state law. *Rains*, 124 S.W.3d at 584-86. The trial court denied the retailer's motion for summary judgment, and the Court of Appeals granted the retailer's application for an interlocutory appeal. *Id.* at 584-85. The court presumed, for purposes of reviewing the denial of the retailer's motion for summary judgment, that the retailer was "negligent per se" by virtue of its violation of a statute prohibiting the sale of handgun ammunition to an eighteen-year-old. *Id.* at 592. Proceeding to issues of causation and independent intervening cause, the court gave the following summary of pertinent legal principles:

> Tennessee's courts, like other state and federal courts, have consistently recognized that the independent intervening cause doctrine may properly be invoked in cases involving self-inflicted injury or death. Like courts in other jurisdictions, they have also recognized the following three exceptions to this general rule: (1) circumstances in which the defendant's negligence causes delirium or insanity that results in self-destructive acts; (2) custodial settings in which the custodian knew or had reason to know that the inmate or patient might engage in self-destructive acts; and (3) special relationships, such as a physician-patient relationship, when the caregiver knows or has reason to know that the patient might engage in self-destructive acts.

> In cases brought against persons who supplied a suicide victim the means to commit suicide, the foreseeability question hinges on the victim's behavior and demeanor at the time of the sale. Abnormal behavior can provide a basis for concluding that the supplier knew or should have known that the decedent was suicidal.

---

[4] *See Champagne v. U.S.*, 513 N.W.2d 75, 81 (N.D. 1994) ("[W]hen a patient's suicide is a foreseeable consequence of the medical provider's negligent care, the act of suicide cannot be deemed a superseding intervening cause."); *Jacoves v. United Merch. Corp.*, 9 Cal. App. 4th 88, 111-12, 11 Cal. Rptr. 2d 468, 482-83 (1992) (involving psychiatric patient who committed suicide soon after release); *Summit Bank v. Panos*, 570 N.E.2d 960, 968-69 (Ind. Ct. App. 1991) (involving doctor who prescribed drug without warning of dangers of combination with alcohol); *Cowan v. Doering*, 545 A.2d 159, 166-67 (N.J. 1988) (involving patient who jumped from window while hospitalized after overdose).

*Id.* at 593-94 (citations and footnote omitted).  The court in *Rains* concluded that "[t]he undisputed facts in this record provide no basis for concluding that Bend of the River knew or should have known that Mr. Rains intended to use the ammunition he purchased on July 16, 1997 to commit suicide."  *Id.* at 596.  The court, therefore, found that the suicide was an independent intervening cause that prevented the retailer from being liable for Mr. Rains's suicide as a result of selling ammunition in violation of the statute.  *Id.*

The defendants in this case rely upon the three exceptions set forth by the court in *Rains* and argue that, in order for a municipality to be held liable for a suicide, one of these three exceptions must apply.[5]  Ms. Ramsey acknowledges that the three *Rains* exceptions do not apply here.  Citing *White*, she asserts that "the issue is simply a matter of whether it was foreseeable to Defendants that Rebecca Ramsey would take her own life if [the defendants] refused to respond to Plaintiff's plea for help."  We agree with Ms. Ramsey.  As a federal district court stated in interpreting *White*, "the touchstone is foreseeability, not whether a given case fits into a previously carved-out exception." *Smith v. Pfizer, Inc.*, 688 F. Supp. 2d 735, 748 (M.D. Tenn. 2010).

Because we are addressing the defendants' motions for summary judgment, we must view the evidence in the light most favorable to the plaintiff.  Thus, we assume that, as Ms. Ramsey asserts, she alerted the defendants that Rebecca was threatening suicide and both the ECD and the City police department refused to send help.  Under these circumstances, a factfinder could reasonably conclude that it is foreseeable that Rebecca would follow through with her threats to commit suicide.  We conclude, then, that the defendants were not entitled to summary judgment on the basis that Rebecca's suicide was a superseding intervening cause.

## Public Duty Doctrine

The other main issue on appeal is whether Ms. Ramsey's claims are barred by the public duty doctrine.[6]  For the reasons discussed below, we conclude that they are not barred.

The public duty doctrine "shields a public employee from suits for injuries that are caused by the public employee's breach of a duty owed to the public at large." *Ezell v.*

---

[5] We note that the scenario addressed by the court in *Rains* does not fall within any of the three exceptions listed by the court.  It appears that circumstances in which a person supplies the victim with the means to commit suicide constitute another exception to the rule that suicide is an independent intervening cause. The court in *Rains* cited cases in which the defendants supplied drugs or guns in violation of a statute. *Rains*, 124 S.W.3d at 594.

[6] The District argues that the trial court did not make "an appealable ruling" as to the public duty doctrine. Although the trial court did not rely upon the public duty doctrine, it did state how it would rule on that issue.  Moreover, this Court has the discretionary authority to address the issue even if it is not the basis of the trial court's ruling.  *See* TENN. R. APP. P. 13(b).

*Cockrell*, 902 S.W.2d 394, 397 (Tenn. 1995). The doctrine protects governmental entities as well as public employees. *See Holt v. City of Fayetteville*, No. M2014-02573-COA-R3-CV, 2016 WL 1045537, at *6 (Tenn. Ct. App. Mar. 15, 2016)). Our Supreme Court has held that the Tennessee Governmental Tort Liability Act did not abolish the public duty doctrine. *Ezell*, 902 S.W.2d at 401. There is a special duty exception to the public duty doctrine:

> [A] special duty of care exists when 1) officials, by their actions, affirmatively undertake to protect the plaintiff, and the plaintiff relies upon the undertaking; 2) a statute specifically provides for a cause of action against an official or municipality for injuries resulting to a particular class of individuals, of which the plaintiff is a member, from failure to enforce certain laws; or 3) the plaintiff alleges a cause of action involving intent, malice, or reckless misconduct.

*Id.* at 402; *see also Chase v. City of Memphis*, 971 S.W.2d 380, 385 (Tenn. 1998); *Hurd v. Woolfork*, 959 S.W.2d 578, 582 (Tenn. Ct. App. 1997).

The question presented in this case is whether the third group of criteria for the special duty exception to the public duty doctrine, regarding reckless misconduct, is applicable. In the context of the special duty exception, reckless conduct has been defined as occurring "'when a person is aware of, but consciously disregards, a substantial and unjustifiable risk of such a nature that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances.'" *Brown v. Hamilton Cnty.*, 126 S.W.3d 43, 49 (Tenn. Ct. App. 2003) (quoting *Gardner v. Insura Prop. & Cas. Ins. Co.*, 956 S.W.2d 1, 3 (Tenn. Ct. App. 1997)).

Ms. Ramsey's position is that the District and the Department were reckless in refusing to send help despite her pleas that her daughter was threatening to commit suicide. What is the evidence in the record regarding reckless conduct on the part of the District and the Department? Ms. Ramsey testified in her deposition that she told the dispatcher that Rebecca was threatening suicide and that she wanted help. According to Ms. Ramsey's testimony, the dispatcher told her that "it wasn't their policy to come out on a family dispute." After several conversations with the dispatcher, Ms. Ramsey was finally connected to a police officer, who told her the same thing. During her deposition, District employee Lane testified:

> Q. Okay. If someone calls Cocke County 9-1-1 and requests a police dispatch to their home, are there certain circumstances where you would deny that request?
> A. No.
> Q. Okay. Why is that?

A. You just don't.

Q. Okay.

A. If someone calls and asks for an officer, you send an officer.

Q. Okay. Is that always the case? There are no exceptions?

A. There are no exceptions.

Q. Okay. And is that a policy of the Cocke County 9-1-1 to always dispatch an officer when one is requested?

A. I don't have it in writing, but I've been told that. Yes.

Ms. Ramsey also submitted the affidavit of Mr. Katsaris, a law enforcement expert, who testified in pertinent part as follows:

1. On April 7, 2013, the Cocke County Emergency Communications District had the duty to dispatch a police officer to the home of Brenda Ramsey if such a request was made. The same is true if Ms. Ramsey expressed concerns about the health and safety of her daughter. The police officers employed by the City of Newport also had a duty to come to the home of Ms. Ramsey if such a request was made.

2. Assuming the trier of fact finds that Brenda Ramsey requested that an officer be sent to her home on April 7, 2013, the failure of the Cocke County Emergency Communications District and the City of Newport police officers to immediately and appropriately respond, amounts to reckless misconduct and gross negligence in that it represents behavior done with reckless disregard to the rights of others and with the utter lack of concern for the safety of others. These Defendants knew or should have known that the failure to appropriately respond could lead to serious injuries or death and amounts to an act of knowingly and consciously violating their duty to protect the lives and safety of others and specifically the deceased, Rebecca Ramsey.

We conclude that, for purposes of the defendants' motions for summary judgment, Ms. Ramsey's claims are not barred by the public duty doctrine. The evidence in the record, viewed in the light most favorable to Ms. Ramsey, is "sufficient to permit a finding [by the trier of fact] that [the defendants] consciously disregarded a substantial and unjustifiable risk of such a nature that its disregard constituted a gross deviation from the standard of ordinary care."[7] *Karnes v. Madison Cnty.*, No. W2009-02476-COA-R3-CV, 2010 WL 3716458, at *6 (Tenn. Ct. App. Sept. 23, 2010).

---

[7] The trial court commented: "[F]rom Plaintiff's viewpoint, the disputed facts from their version of the facts of what the 911 operator or police department did are beyond unfortunate. If what she says is true, they were wrong."

CONCLUSION

The judgment of the trial court is reversed, and this matter is remanded for further proceedings, with costs of appeal assessed against the appellees, Cocke County Emergency Communications District and the City of Newport. Execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE