# IN THE COURT OF APPEALS OF TENNESSEE,
## AT JACKSON

_____

| | | |
|---|---|---|
| ESTATE OF CARLISIA TONEY, | ) | Shelby County Circuit Court |
| a minor, by next friend, parent and | ) | No. 70135-6 T.D. |
| guardian, VERONICA M. TONEY, and | ) | |
| VERONICA TONEY, Individually, | ) | |
| | ) | |
| Plaintiffs/Appellants. | ) | |
| | ) | |
| VS. | ) | C.A. No. 02A01-9801-CV-00005 |
| | ) | |
| BILL CUNNINGHAM, MRS. BILL | ) | |
| (ARDIA) CUNNINGHAM, PERCY L. | ) | |
| WARD and MRS. PERCY L. (MARY) | ) | |
| WARD, | ) | |
| | ) | |
| Defendants/Appellees. | ) | |
| | ) | |

FILED

April 6, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

_____

From the Circuit Court of Shelby County at Memphis.
**Honorable George H. Brown, Jr., Judge**

**John E. Dunlap**, Memphis, Tennessee
Attorney for Plaintiffs/Appellants.

**Robert L. Moore,**
**Michael E. Keeney**,
THOMASON, HENDRIX, HARVEY, JOHNSON & MITCHELL, Memphis, Tennessee
Attorneys for Defendants/Appellees Bill Cunningham and Mrs. Bill (Ardia) Cunningham.

**Warren D. McWhirter**, McWHIRTER & WYATT, Memphis, Tennessee
Attorney for Defendants/Appellees Percy L. Ward and Mrs. Percy L. (Mary) Ward.

OPINION FILED:

**AFFIRMED AND REMANDED**

**FARMER, J.**

**CRAWFORD, P.J., W.S.**: (Concurs)
**HIGHERS, J.**: (Concurs)

In this wrongful death action, the trial court granted a motion to quash process and dismiss complaint filed by Defendants Percy and Mary Ward. Additionally, the trial court granted a motion for summary judgment filed by Defendants Bill and Ardia Cunningham. Plaintiff Veronica Toney appeals the ruling of the trial court regarding the motion to quash process and dismiss complaint as well as the motion for summary judgment. For the reasons set forth below, we affirm the judgment of the trial court.

## *Factual and Procedural History*

On Friday, May 27, 1994, Veronica Toney took her nineteen month old daughter Carlisia to the home of the Wards, the child's paternal grandparents. Mrs. Ward had agreed to care for Carlisia during that weekend while Ms. Toney was at work. On Sunday, May 29, 1994, the Wards took Carlisia to a Memorial Day celebration at the home of the Cunninghams. After dinner, Carlisia fell asleep in Mrs. Ward's lap. Carlisia subsequently woke up and started to play. Sometime thereafter, Mrs. Ward took Carlisia to one of the bedrooms in the Cunninghams' home and put her down for a nap. Mrs. Ward then went outside to watch some of the other guests play tennis in the Cunninghams' back yard. On two or three occasions, Mrs. Ward returned to the house to check on Carlisia, each time finding that the child was asleep. During the tennis match, a ball was hit over the fence that surrounds the tennis court. As Mr. Ward's brother Andre attempted to retrieve the ball, he noticed that Carlisia was floating face down in the water. Carlisia was pulled out of the water, given CPR, and rushed to the hospital, where she subsequently died.

On May 26, 1995, Ms. Toney filed a wrongful death action against the Wards and the Cunninghams. Although process was issued to the Wards on this same date, it was returned unserved on June 16, 1995.[1] On March 20, 1996, counsel for the Wards telephoned counsel for Ms. Toney and requested additional time to answer Ms. Toney's complaint. During this conversation, it was agreed that the Wards would file an answer to Ms. Toney's complaint and that no default judgment would be sought or taken against the Wards. On May 22, 1996, counsel for the Wards

---

[1] Apparently, the failure to serve Mr. and Mrs. Ward occurred because the address listed on the process issued to them was incorrect. The Wards' home is located at 4351 Alice Drive. On the process issued to Mr. and Mrs. Ward, however, their address is listed as 4357 Alice Drive.

faxed and mailed a letter to counsel for Ms. Toney stating that the Wards had not been served with process. Thereafter on July 2, 1996, process was again issued to the Wards. An answer to Ms. Toney's complaint was filed by the Wards on July 17, 1996. The Wards then filed three motions to quash the process that was served on them and to dismiss the complaint. Additionally, the Cunninghams filed a motion for summary judgment. The trial court granted both the Wards' motion to quash summons and dismiss complaint and the Cunninghams' motion for summary judgment and Ms. Toney appeals.

### Motion to Quash Summons and Dismiss Complaint

We first consider whether the trial court erred in granting the Wards' motion to quash the process that was served on them and dismiss Ms. Toney's complaint. Because this issue involves a question of law, our scope of review is *de novo* with no presumption of correctness accompanying the trial court's legal conclusions. *See Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993); *Tennessee Farmers Mut. Ins. Co. v. Moore*, 958 S.W.2d 759, 763 (Tenn. App. 1997); T.R.A.P. 13(d). In the case at bar, the trial court found that, in attempting to serve the Wards with process, Ms. Toney failed to comply with Rule 3 of the Tennessee Rules of Civil Procedure. On the date that Ms. Toney filed her complaint, Rule 3 provided as follows:

> All civil actions are commenced by filing a complaint and summons with the clerk of the court. An action is commenced within the meaning of any statute of limitations upon such filing of a complaint and summons, whether process be issued or not issued and whether process be returned served or unserved. If process remains unissued for 30 days or *if process is not served or is not returned within 30 days from issuance, regardless of the reason, the plaintiff cannot rely upon the original commencement to toll the running of a statute of limitations unless the plaintiff either:*
>
> *(1) continues the action by obtaining issuance of new process within 6 months from issuance of the previous process or, if no process issued, within 6 months from the filing of the complaint and summons, or*
>
> *(2) recommences the action within 1 year from issuance of the original process or, if no process issued, within 1 year from the filing of the original complaint and summons.*

T.R.C.P. 3 (emphasis added).[2] The process issued to the Wards was returned unserved. Thus, Ms. Toney was required by Rule 3 to either (1) obtain new process within six months of the issuance of the original process or (2) refile the action within one year of the date that the original process was issued. Although new process was issued to the Wards on July 2, 1996, this occurred more than six months after May 26, 1995, the date on which the original process was issued to the Wards. Additionally, Ms. Toney did not refile her cause of action against the Wards. Thus, we agree with the trial court that the Wards were not served with process in accordance with the requirements of Rule 3.[3]

Despite her failure to obtain timely service of process on the Wards, Ms. Toney contends that, under the doctrine of equitable estoppel, the Wards should be precluded from asserting lack of service as a defense.[4] Specifically, Ms. Toney argues that the March 20, 1996 agreement between her attorney and counsel for the Wards expressed an intent on the part of the Wards to proceed with the lawsuit, even though they had not been served with process. Ms. Toney further argues that she relied, to her detriment, upon the intent expressed by this agreement.

---

[2]Effective July 1, 1995, subsequent to the filing of Ms. Toney's complaint, this provision was amended to eliminate the language regarding recommencement of the action and to extend the reissuance period from six months to one year. *See* 1995 Advisory Comments to T.R.C.P. 3. Currently, Rule 3 provides as follows:

> All civil actions are commenced by filing a complaint with the clerk of the court. An action is commenced within the meaning of any statute of limitations upon such filing of a complaint, whether process be issued or not issued and whether process be returned served or unserved. If process remains unissued for 30 days or is not served within 30 days from issuance, regardless of the reason, the plaintiff cannot rely upon the original commencement to toll the running of a statute of limitations unless the plaintiff continues the action by obtaining issuance of new process within one year from issuance of the previous process or, if no process is issued, within one year of the filing of the complaint.

T.R.C.P. 3. This amended version of Rule 3, however, may not be applied retrospectively to the case at bar. *See Gregory v. McCulley*, 912 S.W.2d 175, 177 n.3 (Tenn. App. 1995)(citing *Yancy v. Yancy*, 52 Tenn. (5 Heisk.) 353, 363-64 (Tenn. 1871); *Collier v. Memphis Light, Gas & Water Div.*, 657 S.W.2d 771, 775 (Tenn. App. 1983)).

[3]Ms. Toney concedes that she did not obtain timely service of process on the Wards.

[4]Ms. Toney also appears to suggest that the Wards should be estopped from raising this defense simply because they had actual notice of Ms. Toney's lawsuit. In support of this position, Ms. Toney relies on the ruling of our supreme court in *Henley v. Cobb*, 916 S.W.2d 915 (Tenn. 1996). In *Henley*, the court stated that an important factor when considering the applicability of Tennessee's savings statute is whether the defendant had notice of the plaintiff's original action. *See id*. at 917. Henley does not, however, stand for the proposition that actual notice may serve as a substitute for service of process. Having found no other authority to support this contention, we reject this argument of Ms. Toney.

The doctrine of equitable estoppel is generally disfavored under Tennessee law. *See, e.g., Sexton v. Sevier County*, 948 S.W.2d 747, 750 (Tenn. App. 1997)(citing *ACG, Inc. v. Southeast Elevator, Inc.*, 912 S.W.2d 163, 170 (Tenn. App. 1995); *Robinson v. Tennessee Farmers Mut. Ins. Co.*, 857 S.W.2d 559, 563 (Tenn. App. 1993)). The party attempting to invoke the doctrine of equitable estoppel has the burden of proving each of its essential elements. *See id.* at 751 (citing *ACG*, 912 S.W.2d at 170; *Robinson*, 857 S.W.2d at 563; *Bokor v. Holder*, 722 S.W.2d 676, 680 (Tenn. App. 1986)). With respect to the party to be estopped, these elements include as follows:

> (1) Conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) Intention, or at least expectation that such conduct shall be acted upon by the other party; [and] (3) Knowledge, actual or constructive of the real facts.

*Werne v. Sanderson*, 954 S.W.2d 742, 745 (Tenn. App. 1997)(quoting *Consumer Credit Union v. Hite*, 801 S.W.2d 822, 825 (Tenn. App. 1990)). Additionally, with respect to the party invoking the doctrine, these elements include as follows:

> (1) his or her lack of knowledge and of the means of knowledge of the truth as to the facts in question;
> (2) his or her reliance upon the conduct of the party who is estopped; and
> (3) action by the invoking party based thereon of such a character as to change that party's position prejudicially.

*Sexton*, 948 S.W.2d at 751 (citing *ACG*, 912 S.W.2d at 170; *Robinson*, 857 S.W.2d at 563; *Gitter v. Tennessee Farmers Mut. Ins. Co.*, 450 S.W.2d 780, 783 (Tenn. App. 1969)). *See also Werne*, 954 S.W.2d at 745-46.

In the instant case, we do not think that the actions of counsel for the Wards amounted to a false representation or concealment of material facts. Nor do we think that this conduct was calculated to convey the impression that the facts were in any way different from those subsequently asserted by the Wards. The Wards did not agree to waive service of process or to waive any defense based on the statute of limitations. Rather, the Wards simply agreed to file an

answer to Ms. Toney's complaint. Consistent with this agreement, an answer was filed by the Wards on July 17, 1996. Additionally, there is no evidence that, in agreeing to answer Ms. Toney's complaint, the Wards intended to induce Ms. Toney into allowing the statute of limitations to expire. On the contrary, in a letter dated May 22, 1996, counsel for the Wards notified counsel for Ms. Toney that the Wards had not been served with process. On the date that this notification occurred, Ms. Toney could have timely refiled her action against the Wards, thus allowing her to rely on the date of her original complaint for purposes of the statute of limitations.[5] Finally, there is no indication that Ms. Toney did not know or have the ability to discover that the Wards had not been served with process. Although under no obligation to do so, counsel for the Wards notified counsel for Ms. Toney of this fact. Even absent this notification, however, Ms. Toney or her counsel could have readily discovered that the Wards had not been served with process.

As discussed above, we find that Ms. Toney has failed to prove the essential elements of the doctrine of equitable estoppel. Thus, having also found that Ms. Toney failed to comply with the requirements of Rule 3, we hold that the trial court properly granted the Wards' motion to quash the process served on them and dismiss Ms. Toney's complaint.

### Summary Judgment

We next consider whether the trial court erred in granting the Cunningham's motion for summary judgment. Summary judgment is appropriate only if the party seeking summary judgment demonstrates that there are no genuine issues of material fact and further shows that, under the undisputed facts, the moving party is entitled to a judgment as a matter of law. *See White v. Lawrence*, 975 S.W.2d 525, 528 (Tenn. 1998)(citing *Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn. 1993)). When ruling on a motion for summary judgment, the court must view the evidence in the light most favorable to the party opposing the motion, drawing all reasonable inferences in favor of the nonmoving party and discarding all countervailing evidence. *See id.* at 529 (citing *Byrd*, 847

---

[5]Process was originally issued to the Wards on May 26, 1995. Thus, under Rule 3, the last day on which Ms. Toney could refile her action against the Wards and still rely on the original filing date for purposes of the statute of limitations was May 26, 1996. The notification regarding lack of service occurred four days prior to this date on May 22, 1996.

S.W.2d at 210-11).  If there is a dispute as to any material fact or any doubt as to the conclusion to be drawn from the evidence, the motion must be denied.  *See Dooley v. Everett*, 805 S.W.2d 380, 383 (Tenn. App. 1990)(citing *Phillips v. Pittsburgh Consol. Coal Co.*, 541 S.W.2d 411, 413 (Tenn. 1976)).  Because this is solely a legal determination, our review of the trial court's ruling on a motion for summary judgment is *de novo* with no presumption of correctness.  *See White*, 975 S.W.2d at 528-29 (citing *Robinson v. Omer*, 952 S.W.2d 423, 426 (Tenn. 1997); *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997)).

In the instant case, Ms. Toney first alleges that the Cunninghams are liable for the wrongful death of Carlisia under the theory of common law negligence.  Specifically, Ms. Toney contends that the Cunninghams were negligent in failing to take steps to insure that Carlisia did not go in or around the swimming pool, in failing to warn the Wards that the swimming pool posed a danger to Carlisia, and in failing to watch or instruct someone to watch Carlisia or the swimming pool.  In order to recover under this legal theory, the plaintiff must prove (1) that the defendant owed a duty of care to the plaintiff, (2) that the defendant breached this duty, (3) that the plaintiff sustained an injury, (4) that the conduct of the defendant was the cause in fact of the plaintiff's injury, and (5), that the conduct of the defendant was the proximate or legal cause of the plaintiff's injury.  *See, e.g., Coln v. City of Savannah*, 966 S.W.2d 34, 39 (Tenn. 1998)(citing *Bradshaw v. Daniel*, 854 S.W.2d 865, 869 (Tenn. 1993)).  Thus, we must first consider the question of duty.  The existence or nonexistence of a legal duty is entirely a question of law and thus should be determined by the trial court, without the assistance of a jury.  *See, e.g., Blair v. Campbell*, 924 S.W.2d 75, 78 (Tenn. 1996).

Prior to the adoption of comparative fault, Tennessee law imposed a duty on owners and occupiers of land to exercise reasonable care under the circumstances for the safety of those lawfully on their property.  *See, e.g., Eaton v. McLain*, 891 S.W.2d 587, 593 (Tenn. 1994).  Included in this duty was the responsibility to either remove or warn against any latent or hidden dangerous conditions on the premises of which the owner or occupier was or should have been aware.  *See id.* at 594 (citations omitted); *Smith v. Inman Realty Co.*, 846 S.W.2d 819, 823 (Tenn. App. 1992).  However, owners and occupiers of land did not have a duty to remove or warn against dangerous conditions on their property that were open and obvious.  *See, e.g., Eaton*, 891 S.W.2d

at 595 (citations omitted). In *Coln v. City of Savannah*, 966 S.W.2d 34 (Tenn. 1998), the Tennessee Supreme Court recently considered whether and to what extent this so called "open and obvious rule" remains viable after the adoption of comparative fault in Tennessee. *See id.* at 36. After discussing the approaches taken by other jurisdictions that have adopted the doctrine of comparative fault, the court in *Coln* held as follows:

> That a danger to the plaintiff was "open or obvious" does not, *ipso facto*, relieve a defendant of a duty of care. Instead, the duty issue must be analyzed with regard to foreseeability and gravity of harm, and the feasibility and availability of alternative conduct that would have prevented the harm. . . . [I]f the foreseeability and gravity of harm posed from a defendant's conduct, even if "open and obvious," outweighed the burden on the defendant to engage in alternative conduct to avoid the harm, there is a duty to act with reasonable care.

*Id.* at 43. The court then addressed the argument that its ruling would prevent trial courts from granting motions for summary judgment or directed verdict in premises liability cases, stating as follows:

> By retaining the separate analysis of duty, and not totally subsuming all cases by applying comparative fault, the mechanisms of summary judgment and directed verdict remain viable to evaluate cases at preliminary stages in the proceedings. A summary judgment remains appropriate, for example, where the plaintiff has not produced sufficient evidence to meet the "duty" component, or any other component of a negligence claim, as a matter of law.

*Id.* at 44 (citing *Byrd*, 847 S.W.2d at 208).

Applying the rule set forth in *Coln* to the facts of the case at bar, we recognize that an uncovered swimming pool poses a significant risk of harm to a nineteen month old child. Under the facts of the instant case, however, we do not think that the particular injury experienced by Carlisia was foreseeable to the Cunninghams. At the time of the accident, Carlisia was under the supervision of Mrs. Ward. On at least two or three occasions, Mrs. Ward went inside the house to check on Carlisia, each time finding that the child was sleeping. Additionally, the Cunninghams and several of their guests were on or near the tennis court when the accident occurred. From the tennis court, the swimming pool is easily visible. Under these circumstances, it was unlikely that Carlisia would open the back door, walk to the swimming pool, and fall into the swimming pool without

being seen or heard by the Cunninghams or one of their guests. In addition to foreseeability and gravity of harm, we must also consider the feasibility and availability of alternative conduct on the part of the Cunninghams that could have prevented the harm incurred by Carlisia. Ms. Toney argues that the Cunninghams should have warned the Wards that the swimming pool posed a danger to Carlisia. We think, however, that the danger posed by the swimming pool was so obvious that the giving of such a warning would have been superfluous. Additionally, Ms. Toney argues that the Cunninghams should have watched or instructed someone to watch Carlisia or the swimming pool at all times. The Cunninghams knew that Carlisia was in the care of her grandmother, Mrs. Ward, and had every right to believe and expect that she would supervise her granddaughter.

Balancing the factors discussed above, we do not think that the foreseeability and gravity of harm posed to Carlisia by the Cunningham's swimming pool outweighed the Cunninghams' burden to engage in alternative conduct to avoid the harm. Thus, we find as a matter of law that the Cunninghams did not owe a duty of care to Carlisia. Accordingly, because Ms. Toney has not set forth sufficient evidence to establish the duty element of her common law negligence claim, we hold that the trial court properly granted the Cunninghams' motion for summary judgment with respect to this theory of recovery.

Ms. Toney also alleges that the Cunninghams are liable for the wrongful death of Carlisia under the theory of negligence per se. Specifically, Ms. Toney contends that they violated section 3408.3 of the Memphis and Shelby County Building Code which, on the date of the accident, provided as follows:

> Every person owning land on which a swimming pool is situated shall erect and maintain thereon an adequate enclosure, surrounding either the property or pool area, sufficient to make such swimming pool inaccessible to small children. Any swimming pool containing 48 inches or more water in depth at any point shall be located in a yard having an adequate enclosure, surrounding either the property or pool area, sufficient to make such swimming pool inaccessible to children. Such enclosures, including gates therein, must be not less than 4 feet above the underlying grounds: all gates must be self-latching with latches placed 4 feet above the underlying ground, or otherwise made inaccessible from the outside to small children. A natural barrier, pool cover, or other protective device approved by the Building Official may be used so long as the degree of protection afforded is equivalent to the enclosure, gate, and latch described herein.

Joint Bldg. Code of Memphis and Shelby County § 3408.3 (1994).[6]

In the instant case, there is no dispute regarding the physical characteristics of the Cunninghams' property. The Cunninghams' swimming pool is located approximately thirty feet north of their house. There is no fence immediately surrounding the swimming pool. East of the swimming pool is a tennis court, which is surrounded by a twelve to fifteen foot chain-linked fence. The entire back yard, including the swimming pool, is surrounded by a wooden privacy fence with a wrought iron entrance gate. Thus, there are two ways to enter the Cunninghams' back yard, through the back door of the house and through the entrance gate.

We now consider whether, under the undisputed facts of the case at bar, the Cunninghams violated section 3408.3 of the Memphis and Shelby County Building Code. In construing this provision, we must attempt to ascertain and give effect to the intent of its drafters, looking primarily to the natural and ordinary meaning of the words used. *See, e.g., Browder v. Morris*, 975 S.W.2d 308, 311 (Tenn. 1998). Under the express language of section 3408.3, the Cunninghams were required to "erect and maintain [on their land] an adequate enclosure, surrounding *either the property or pool area*, sufficient to make such swimming pool inaccessible to small children." Joint Bldg. Code of Memphis and Shelby County § 3408.3 (1994)(emphasis added). Thus, there are two alternative actions that the Cunninghams could have taken in order to comply with this provision. They could either erect and maintain a fence immediately around their swimming pool or they could erect and maintain a fence enclosing their entire back yard. In the

---

[6]Effective January 1, 1996, this provision was amended and now reads as follows:

> Every person owning land on which a swimming pool is situated shall erect and maintain thereon an adequate enclosure, surrounding either the property or pool area, sufficient to make such swimming pool inaccessible to small children. Any swimming pool containing more than 18 in. water in depth at any point shall be located in a yard having an adequate enclosure, surrounding either the property or pool area, sufficient to make such swimming pool inaccessible to children. Such enclosures, including gates therein, must be not less than 4 feet above the underlying grounds; all gates must be self-latching with latches placed 4 feet above the underlying ground, or otherwise made inaccessible from the outside to small children. A natural barrier, pool cover, or other protective device approved by the Building Official may be used so long as the degree of protection afforded is equivalent to the enclosure, gate, and latch described herein.

Joint Bldg. Code of Memphis and Shelby County § 3708.3 (1998).

instant case, it is undisputed that there was a fence surrounding the Cunningham's entire back yard, including the swimming pool. We therefore find that the Cunninghams complied with the requirements of section 3408.3 and are entitled to a judgment as a matter of law to the extent that Ms. Toney's claim against them is based on the theory of negligence per se. Accordingly, we hold that the trial court properly granted the Cunninghams' motion for summary judgment with respect to this issue.

### *Conclusion*

Based on the foregoing, we find that the trial court did not err in granting the Wards' motion to quash process and dismiss complaint or in granting the Cunninghams' motion for summary judgment. The ruling of the trial court is therefore affirmed. Costs on appeal are assessed to Ms. Toney, for which execution may issue if necessary.

_____
FARMER, J.

_____
CRAWFORD, P.J., W.S. (Concurs)


_____
HIGHERS, J. (Concurs)